**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GALE PRODUCTS, DIVISION OF OUTBOARD MARINE CORPORATION, Respondent.**

**No. 14523.**

United States Court of Appeals Seventh Circuit.

Sept. 30, 1964.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Paul M. Thompson, Atty. N. L. R. B., for petitioner.

Charles R. Sprowl, E. Marvin Buehler, Chicago, Ill., for Gale Products, Division of Outboard Marine Corp., Respondent.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

This case is before the Court upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended (29 U.S.C.A. § 160(e)) for enforcement of the Board's order issued against Gale Products, Division of Outboard Marine Corporation, respondent. The Board's decision and order are reported at 142 NLRB No. 136.

The Board found that the respondent company violated Section 8(a) (1) of the Act[1] by maintaining and enforcing a collective bargaining contract provision prohibiting the distribution of union literature or solicitation of union membership anywhere on the company's premises at any time. The Board ordered the company to cease and desist from such practice, and from in any like or related manner infringing upon employees' rights under the Act; to expunge from its records final warning notices issued to eight employees for violation of the contract prohibitions; and to post designated notices.

The company employs about 1350 production and maintenance employees who are represented by Marine Motor Lodge No. 1659, International Association of

---

1. All references herein to the "Act" are to the National Labor Relations Act, as amended. 29 U.S.C.A. § 151 et seq.

Machinists, AFL–CIO.[2] The 1962–1964 collective bargaining contract between the company and IAM provides that the company will furnish bulletin boards for the posting of Union and certain other notices and that:

"There shall be no other general distribution or posting by employees of pamphlets, advertising or political matter, notices, or any kind of literature upon Company property, other than as herein provided."

And, Factory Rules and Regulations negotiated as a part of the contract provide:

"No employee is authorized or will be permitted to solicit membership for Insurance Companies, Fraternal, Social or other organizations, or to carry on within the Plant any outside business involving patronage on the part of the Employees. Violation of this rule will result in discharge."

In March 1962, company employee Bernard Smith, who was President of the IAM local, and the local's other officers, were removed from office by the International. About two weeks later Smith and some other employees formed a rival labor organization.[3] Their request that the company recognize such organization as bargaining agent for the production and maintenance employees was refused.

A request by IAM for permission to make distribution of literature at the company's gates and in its parking lot explaining the reasons for the removal of the local's officers was refused by the company on the ground it would violate the contract provisions.

On May 2 and 3, 1962, Smith and seven other employees distributed Independent membership cards to company employees on company premises. The distribution of this rival union material occurred during the employees' own time and in non-work areas. These eight employees were given written "final warning" notices stating that such distribution constituted a contract violation and that further infractions would be considered a cause for dismissal.

The main contested issue presented for our determination is whether the contract prohibitions as applied to rival union activity in the distribution of literature and solicitation of membership on company premises are invalid as constituting an interference with employee organizational rights guaranteed by Section 7 of the Act and the company's enforcement of the restrictions therefore an unfair labor practice violative of Section 8(a) (1).

The prohibitions here involved were not unilaterally imposed by the company —they are the fruits of collective bargaining agreed to by the employees involved. Nor does the record disclose discriminatory enforcement of the contract provisions against the Independent adherents.

In May Department Stores Co., 59 NLRB 976, 981, n. 17, the Board had occasion to observe and rule:

"The respondent also points to contracts which it has with various craft unions, affiliated with the American Federation of Labor, [unions other than the ones attempting to organize the respondent company's employees], covering a small segment of its employees, which prohibit union solicitation at any time on the respondent's premises. Again, these contracts are the results of the mutual accommodation involved in collective bargaining over the terms and conditions of employment of the employees covered by them.

\* \* \* \* \* \*

"We do find \* \* \* that the employees embraced by these contracts, on the assumption that the latter were entered into by organizations which represented a majority of the employees in an appropriate unit, have thereby effectively bargained

2. Referred to herein as IAM.

3. Referred to herein as "Independent".

away their right to engage in union solicitation on the respondent's premises. Consequently, and so long as the contractual provisions in question remain in effect, the respondent's prohibition against union solicitation on the respondent's premises at all times by employees covered by such contracts is not to be deemed improper. Cf. Matter of North American Aviation, Inc., 56 N.L.R.B. 959."

We are of the opinion that the rationale of May Department Stores is applicable here. We perceive no basis in the Act or its objectives for the Board's contention that distribution of literature or solicitation on behalf of a rival union must be excluded from the purview of May. The contract provisions here assailed did not strip the employees of fundamental rights guaranteed by the Act. The provisions preclude only a convenient—albeit a most effective—way of their exercise. Employees are free to forego their qualified rights to on the premises organizational activity in favor of the available alternatives thereto. The "desirability" of collective bargaining contract provisions from the standpoint of either the employees or the employer is not the measure of their validity. Moreover, the arrangement here involved is conducive to the stabilization of labor relations during the contract period and thus in harmony with a prime objective of the Act.

We have considered the subsidiary issue presented by the Board's contention that conceding the validity of the contract prohibitions the manner in which the company enforced them constituted an unfair labor practice. But from our examination of the record as a whole we are convinced that the company's actions were directed toward stopping the violation of the contract provisions—impartially preventing the prohibited distribution and solicitation—not to partisan opposition to the rival union organization. The minor incidents, such as the refusal to return the material being circulated to employees who voluntarily surrendered it when their activity was questioned, upon which the Board rests its conclusion, do not in our opinion constitute substantial evidence to support the Board's ultimate finding in this connection.

Enforcement of the Board's order is denied.

Enforcement denied.

KILEY, Circuit Judge (dissenting).

I respectfully dissent.

In my opinion the reasons underlying the holdings invalidating unilateral rules against solicitation on employees' time on company property, e. g., Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), N. L. R. B. v. United Aircraft Corp., 324 F.2d 128 (2d Cir. 1963), cert. denied, 376 U. S. 951, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964), Time-O-Matic, Inc. v. N. L. R. B., 264 F.2d 96 (7th Cir. 1959), apply with equal force to the contract provision before us. The footnote in May Department Stores relied on by the majority is not, in my opinion, sufficient authority for reversing the Board.

The heart of the matter and the broad policy of the Act which invalidates particular agreements is the protection of the "right of employees to organize for mutual aid without employer interference." 324 U.S. at 798, 65 S.Ct. at 985. The employer indirectly interferes with this freedom when it enters into this type of agreement with the bargaining agent. The right of freedom to organize belongs to dissidents as well as the bargaining agent, and limiting its exercise by no-solicitation agreements, as the one before us, tends to smother competitive union organizational activity and accordingly militates against the purposes of the Act.

The agreement to relinquish this valuable right should not be upheld in the absence of "special circumstances." There is no evidence of any actual disruption of working activities resulting from these solicitation attempts, and none to show that such solicitation on nonworking time

would disrupt work. Also, there was no evidence tending to show effective alternatives available to the rival union to solicitation on the premises of the Company. This proof was the burden of the Company under the holding in Republic Aviation Corp. v. N. L. R. B., 324 U.S. 793, 65 S.Ct. 982 (1945), as to unilateral no-solicitation rules.

I think also that the record supports the Board's finding and conclusion that conceding the contact provision is valid, the Company's enforcement of the provision was an unfair labor practice. The record justifies an inference that the Company demanded membership cards from the rival union. Under the reasoning in N. L. R. B. v. Essex Wire Corp., 245 F.2d 589 (9th Cir. 1957), this was an unfair labor practice as a coercive influence exercised on employees by the Company.