**ARMCO STEEL CORPORATION,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 16169.

United States Court of Appeals
Sixth Circuit.

April 27, 1965.

Jerome Powell, Washington, D. C., for petitioner, Frank Cummings, William H. Willcox, Gall, Lane & Powell, Washington, D. C., on the brief.

Stephen Goldberg, N. L. R. B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Vivian Asplund, Atty., N. L. R. B., Washington, D. C., on the brief.

Theodore Repper, Jr., Middletown, Ohio, on the brief for Armco Employees Independent Federation, amicus curiae.

Before WEICK, Chief Judge, and CECIL and PHILLIPS, Circuit Judges.

WEICK, Chief Judge.

The principal question here is whether a provision in a collective bargaining agreement voluntarily entered into between an employer and a labor union, which prohibits the distribution of all literature on the property of the employer, violates Section 8(a) (1) of the National Labor Relations Act, as amended.[1]

The Board held the provision invalid when maintained and enforced to prohibit employee distribution, on company property in non-working areas and during non-working hours, of union literature of any labor union other than that of the collective bargaining representative. It issued an order, which is the subject of this review, requiring the company to cease and desist from maintaining and enforcing the no-distribution clause with respect to employee distribution of literature of any labor union except the incumbent union. 148 NLRB No. 126.

█ The company had maintained and enforced the no-distribution provision uniformly against *all* of its employees. The rule adopted by the Board in the present case, which favors employees supporting a rival nonincumbent union over loyal employee-supporters of the collective bargaining representative, is in our opinion wrong and will not be enforced by this Court. We hold that the no-distribution provision is valid with respect to all of the employees of Armco.

The facts are not in dispute. Armco has a steel producing plant and two fabricating plants at Middletown, Ohio, and a complex of blast furnaces and coke ovens located a short distance therefrom at Hamilton, Ohio. Armco Employees Independent Federation, Inc. (hereinafter referred to as AEIF) has been the certified bargaining representative of a unit of Armco's production and maintenance workers since 1944. There are approximately fifty-nine hundred employees in the unit, of which forty-eight hundred work at the Middletown plant and the remainder at Hamilton.

United Steelworkers of America AFL-CIO has been engaged for many years in a continuous campaign to win the support of Armco's employees. Elections have been held in 1944, 1947 and 1962, all of which were won decisively by AEIF. Over 91% of the eligible em-

---

1. Section 7 and 8(a) (1) of the Act provide:

Sec. 157. "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3)." 29 U.S.C. § 157.

Sec. 158(a) "It shall be an unfair labor practice for an employer—

"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; * * *." 29 U.S.C. § 158

ployees voted in the 1944 election; over 94% in the 1947 election, and 95% in 1962.[2]

The Trial Examiner's findings with respect to the form of the no-distribution provision contained in the collective bargaining agreement are in the footnote.[3] These provisions in substantially the same form were contained in the 1944 collective bargaining agreement and have been continued in the subsequent agreements.

The uncontradicted evidence was to the effect that a no-distribution provision substantially the same as Armco's is common in numerous collective bargaining agreements, including two of the Steelworkers' agreements.

The Trial Examiner made findings that Armco had offered evidence to show that the no-distribution provisions did not unduly restrict or seriously hamper the organizational activities of Armco's employees; that effective alternative means of communication were available to reach the employees; and that "Armco does not prohibit discussions in its plants among employees concerning union solicitation and membership, so long as they do not interfere with production. There are opportunities for such discussions during lunch periods, coffee breaks and occasional free time when employees wait for machines to be repaired." No evidence was offered by General Counsel to refute Armco's showing.

The Trial Examiner decided that the evidence as to the alternative means of communication was not relevant. He held that the contract provision was invalid. He based his decision on Gale Products, Div. of Outboard Marine Corp., 142 NLRB 1246 (1963).[4] He stated that there was no evidence to establish the necessity for such a provision to maintain production or discipline and it was therefore unwarranted. He further stated in a footnote:

"That numerous contracts, as shown, between employers and labor organizations contain no-distribution clauses of the sort here involved provides no legal defense to the invalidity of Armco's contract. This circumstance is a policy matter more appropriate for the Board's consideration."

The Board adopted the Trial Examiner's decision except that it limited the invalidity of the no-distribution provision to employees supporting any labor organization except the collective bargaining agent.

The Trial Examiner and Board both relied on the Board's Gale Products decision, a 3 to 2 decision which established a new policy in conflict with a line of Board decisions extending as far back as 1944. The former policy had upheld the validity of no-distribution provisions in collective bargaining agreements.[5]

The trouble with the Board's reliance on Gale Products in the present case is

---

2. A fourth election was held in 1964, in which the vote was 3954 for AEIF, and 1256 for Steelworkers.

3. "The provisions attacked in this proceeding are contained in article VI, Section F entitled 'Bulletin Boards.' Armco agrees in these provisions to furnish bulletin boards on which may be posted notices concerning AEIF recreational and social affairs, elections and election results, meetings and appointments. Other notices may be posted if agreed upon by AEIF and Armco. The number and location of the bulletin boards in each plant are to be determined by agreement between AEIF and Armco. Having stat-

ed the foregoing conditions the section concludes with the following paragraph: "4. There shall be no other distribution or posting by employees of literature upon company property except as approved by the company."

4. The Trial Examiner stated: "I must, in light of the Board's holding in Gale Products, find that the contractual prohibition in Armco's contract with AEIF broadly prohibiting distribution by employees of union literature during non-working time in non-work plant areas is invalid."

5. May Department Stores Company, 59 NLRB 976 (1944); Fruitvale Canning

that subsequent to its order Gale Products was overturned by the Seventh Circuit. NLRB v. Gale Products, Div. of Outboard Marine Corp., 337 F.2d 390 (C.A.7, 1964). Certiorari was not applied for.

The Board's order is thus left without support. Even prior to the decision of the Seventh Circuit, the Board's decision in Gale Products was not followed by the District Court for the Southern District of Ohio when that Court in a well considered opinion denied an application for injunction to prohibit Armco from enforcing the no-distribution provision pending hearing of the present case.[6]

Sections 7 and 8 of the Act protect employees in the exercise of their right to engage or refrain from engaging in union activity free from interference, discrimination or coercion on the part of an employer or labor union. Neither Armco nor AEIF interfered with, coerced or discriminated against any of its employees. The provisions of the collective bargaining agreement were merely applied uniformly against all employees.

█ Under Section 9 of the Act the collective bargaining representative was the exclusive representative of *all* the employees, which included dissident as well as those who were loyal to the incumbent. It was the Board who divided Armco's employees into two classes and held the collective bargaining agreement invalid as to dissident and valid as to loyal employees supporting the representative. The purpose of the National Labor Relations Act is to promote industrial peace. Policy making decisions of the Board favoring employees supporting a rival union over those loyal to the incumbent would seem to us to have the opposite effect.

█ Freedom to contract is perhaps one of the most important rights enjoyed by labor unions and employers.

The Board has no power to interfere with the exercise of that right or to sit in judgment on the wisdom of substantive contractual provisions. It may interfere only when a clause in a contract violates a specific statute and is illegal. NLRB v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 360, 78 S.Ct. 718, 2 L.Ed.2d 823 (1957); Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944); NLRB v. Industrial Rayon Corp., 297 F.2d 62 (C.A.6, 1961). The Board has not pointed out any specific provision of the Act which is violated by the no-distribution clause.

█ In our opinion, whatever right employees had under Section 7 to distribute union literature on company property may be waived by their collective bargaining representative. The contractual waiver of rights of equal or greater significance has been upheld.

No strike or lockout: United Steelworkers of America, AFL-CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956)

Management functions: NLRB v. American Nat'l Ins. Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952).

Ballot and recognition: NLRB v. Wooster Division of Borg-Warner Corp., supra.

Union security: Radio Officers' Union of Commercial Telegraphers Union etc. v. NLRB, 347 U.S. 17 (1954).

Hiring hall: Local 357, Intern. Broth. of Teamsters, etc. v. NLRB, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961).

Hiring by union foremen: NLRB v. News Syndicate Co., 365 U.S. 695, 81 S.Ct. 849, 6 L.Ed.2d 29 (1961).

Co., 90 NLRB 884 (1950); Clinton Foods, Inc., 112 NLRB 239 (1955); Cf. North American Aviation Inc., 56 NLRB 959 (1944).

6. Getreu v. Armco Steel Corp., 241 F. Supp. 376 (S.D.Ohio 1964).

Seniority credit for military service: Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

Agency shop: NLRB v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).

Cases cited by the Board [7] involving invalidity of unilateral rules of employers prohibiting employee distribution of literature are not in point.

■ The Supreme Court has made it clear that national labor policy is for the Congress and not the Board to determine. American Ship Building Co. v. NLRB, 85 S.Ct. 955 (1965); NLRB v. Brown, 85 S.Ct. 980 (1965); NLRB v. Insurance Agents, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960); NLRB v. American Nat'l Ins., supra.

In our opinion, the fact that alternative means of communication with employees were available was relevant as to the right of nonemployees to distribute union literature on company premises. NLRB v. United Steelworkers, 357 U.S. 357, 363, 78 S.Ct. 1268, 2 L.Ed.2d 1383 (1958). Where, as here, it has been proven that alternate means of communication were adequate, the rival union has not been prejudiced by the maintenance of the no-distribution clause and the issue over it becomes highly technical.

The Trial Examiner was of the view that an employer should have a compelling reason, such as interference with production or discipline, in order to justify a no-distribution provision in a collective bargaining agreement. Armco's reason was that it was a safety measure, providing good housekeeping and avoiding litter on its property. The Trial Examiner thought this was not adequate.

As we have pointed out, no-distribution was a condition of employment. It was a proper subject for collective bargaining. Neither union nor employer are required to justify for the Board their insistence on particular subjects to be embodied in an agreement so long as they are not illegal. Presumably the union obtained from Armco a *quid pro quo* for its assent to the clause. The parties to a contract cannot be restored to their *status quo* when a clause is deleted from their contract without mutual consent.

■ The remaining issue in the case concerned three instances of interrogation by supervisors of employees relative to their resignation from the incumbent union. The Board found the interrogation was coercive.

These instances were isolated. Only two supervisors out of three hundred fifty-six full-time supervisors and one hundred twenty-five part-time supervisors, and three out of fifty-nine hundred employees, were involved. There were no threats or promises. In our judgment the interrogation was not coercive.

The order of the Board is set aside.

---

7. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); NLRB v. Babcock & Wilcox, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956). For non-employee distribution see NLRB v. Babcock & Wilcox, supra.