PHILADELPHIA MARINE TRADE
ASSOCIATION et al.

v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION, AFL–CIO, et al.

Civ. A. No. 35901.

United States District Court
E. D. Pennsylvania.

June 30, 1965.

Kelly, Deasey & Scanlan, by Robert G. Kelly, Philadelphia, Pa., for plaintiffs.

Freedman, Borowsky & Lorry, by Martin J. Vigderman, Philadelphia, Pa., for ILA; Locals 1291 and 1566, ILA and their respective officers.

Wilderman, Markowitz & Kirschner, by Richard H. Markowitz, Philadelphia, Pa., for Local 1242, ILA; Local 1242-1, ILA.

JOSEPH S. LORD, III, District Judge.

This is a suit brought by the Philadelphia Marine Trade Association (PMTA) and others seeking damages under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).[1]

PMTA is the collective bargaining agent for its members (business enterprises operating steamship lines, steamship agencies, stevedoring companies and other companies engaged in services allied to the stevedoring and maritime trade). The other plaintiffs are steamship agencies that as members of PMTA entered into the collective bargaining agreement on behalf of themselves and on behalf of their principals who are steamship owners; steamship owners who are members of PMTA and parties to the agreement; business enterprises (ship owners and charterers) incorporated under laws of various nations and represented by steamship agents who are members of PMTA; and one stevedore which is a member of PMTA and a party to the collective bargaining agreement.

1. "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Labor Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185(a).

The members of PMTA employ longshoremen of the International Longshoremen's Association, AFL–CIO (ILA).

Defendants are the ILA, the collective bargaining agent through its local unions which are also defendants, and individuals who are officers of the ILA, or of the respective local unions.

The complaint has already been dismissed as to several of the individual defendants.

This matter comes before us now on the motions to dismiss of ILA and four of the local unions. The defendant unions advance four grounds for dismissal:

1. This court has no jurisdiction because plaintiffs are not employers of the members of the local unions that are defendants in this case. Defendants argue that 29 U.S.C.A. § 185(a) applies only to plaintiffs that employ members of the defendants—i. e., that under § 185 (a) the parties can only be "employers" and labor organizations representing employes who are employed by the "employer."

2. Those plaintiffs not members of PMTA are not parties to the collective bargaining agreement and therefore have no standing to sue upon the agreement which is the subject of this suit. See Isbrandtsen Co. v. Local 1291, etc., 204 F.2d 495 (C.A. 3, 1953).

3. The gravamen of the complaint is the failure of the defendants to submit to the grievance procedure provided by the collective bargaining agreement. The agreement provides for submission to the grievance procedure of disputes arising between the companies and unions that are parties to the agreement,

and since plaintiffs allege in their complaint that the ILA has no dispute with PMTA or its members, the defendants had nothing to submit to grievance procedure and therefore could not be said to have breached their obligation of submission to the grievance procedure.[2]

4. The activity of defendants was protected under Sections 7 and 8 of the Labor Management Relations Act, 29 U. S.C.A. §§ 157 and 158,[3] and therefore cannot be the basis of an action for damages.

We find it unnecessary to deal with these important issues at this time. If this court has jurisdiction it would be solely because this is a suit for violation of a contract between an employer and a union. 29 U.S.C.A. § 185(a). The contract between PMTA and the defendants provides that:

"*All disputes and grievances of any kind or nature whatsoever arising under the terms and conditions of this agreement,* and all questions involving the interpretation of this agreement * * * shall be referred to a Grievance Committee, which shall consist of two members selected by the Employers and two members selected by the Union. * * * Should the Grievance Committee be unable to resolve the issue submitted and should neither party request an immediate decision from the Arbitrator, then the grievance or dispute shall be submitted to a Joint Grievance Panel consisting of three representatives of the Association and three representatives of the Union. To the end that there shall be no work interruptions and to the end that there shall be limited ne-

2. Paragraph 46 of the complaint alleges that defendants on two occasions struck the Port of Philadelphia "in direct violation of the respective grievance and arbitration clauses in the several collective bargaining agreements * * *." [There are separate agreements for each local union. Because they are worded identically with respect to each provision pertinent to this opinion they are treated in this opinion as if there were one joint agreement.]

3. "Employees shall have the right * * * to engage in * * * concerted activities for the purpose of * * * mutual aid or protection, * * *." Labor Management Relations Act § 7, 29 U.S. C.A. § 157. Section 8 of the Labor Management Relations Act, 29 U.S.C.A. § 158 makes it an unfair labor practice for an employer to interfere with the exercise of rights granted by Section 7.

cessity for arbitration, the Panel shall make every effort to resolve all grievances or disputes which could not be resolved by the Grievance Committee. * * * Should the Panel be unable to resolve a grievance or dispute which arose in the previous two weeks, or be unable to resolve a grievance or dispute anticipated in the ensuing two weeks, the dispute or grievance, including matters of interpretation of the contract, shall be referred to an Impartial Arbitrator who shall be selected to serve for a period of one year from a panel of five arbitrators to be submitted by the American Arbitration Association. * * * Should the terms and conditions of this agreement fail to specifically provide for an issue in dispute, or should a provision of this agreement be the subject of disputed interpretation, the Arbitrator shall consider port practice in resolving the issue before him. If the Arbitrator determines that there is no port practice to assist him in determining an issue not specifically provided for in the collective bargaining agreement, or no port practice to assist him in resolving an interpretation of the agreement, the issue shall become the subject of negotiation between the parties. There shall be no strike and no lock-out during the pendency of any dispute or issue while before the Grievance Committee, the Joint Panel or the Arbitrator." (Emphasis added.)

The next provision provides that:

" * * * *A difference of opinion regarding the meaning of any provisions of this agreement,* which cannot be amicably adjusted between the parties, shall be adjusted in accordance with * * * " [the grievance procedure]. (Emphasis added).

■ The parties themselves have agreed to submit any matters involving the collective bargaining agreement to the grievance procedure. The plaintiffs claim the defendants breached the contract and the defendants deny the allegation. This is clearly a "difference of opinion regarding the meaning of . * * this agreement * * * " and a "dispute * * * under the terms * * * of this agreement * * *." We must stay this proceeding in order that the parties submit to the grievance procedure as they agreed to do. See United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & G. Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ The reach of 29 U.S.C.A. § 185 (a) is limited to suits for violation of agreements. A determination of whether there was a breach of the contract and what rights flow from that breach requires an interpretation of that agreement, and the parties to the contract have agreed to submit all such matters through grievance procedure. Hence, a decision on the merits rendered by this court would not be binding. Cf. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343 (1960).

■ We noted in United States Steel Corp. v. Seafarers' International Union, D.C., 237 F.Supp. 529, 531–532 (1965) that:

" * * * * The policy of enforcing agreements to arbitrate has been often enunciated by the Supreme Court. In Drake Bakeries, Inc. v. Local 50, (1962) 370 U.S. 254 at pages 263–264, 82 S.Ct. 1346 at page 1352, 8 L.Ed.2d 474 the Court said:

" ' * * * In passing § 301, Congress was interested in the enforcement of collective bargaining contracts since it would "promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace" (S.Rep.No.105, 80th Cong., 1st Sess. 17). It was particularly interested in placing "sanctions behind agreements to arbitrate grievance disputes" * * *. The preferred

method for settling disputes was declared by Congress to be "[f]inal adjustment by a method agreed upon by the parties" (§ 203(d) of the Act, 29 U.S.C. § 173(d)). "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play" * * *. Under our federal labor policy, therefore, we have every reason to preserve the stabilizing influence of the collective bargaining contract in a situation such as this. We could enforce only the no-strike clause by refusing a stay in the suit for damages in the District Court. We can enforce both the no-strike clause and the agreement to arbitrate by granting a stay until the claim for damages is arbitrated. This we prefer to do. * *'

"See also, e. g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549–550, 84 S.Ct. 909, 11 L.Ed. 2d 898 (1964). * * *"

We therefore stay these proceedings on our own motion.[4] In reaching the conclusion that the action must be stayed pending the grievance process, we have considered, but do not pass upon, defendants' arguments. None of these arguments in any way compels us to reach a different conclusion.

■ We decline to pass upon the question of this court's jurisdiction. A decision on this question would be in the nature of an advisory opinion because of the likelihood that the grievance proceeding will be dispositive of the matter. The attack upon this court's jurisdiction under 29 U.S.C.A. § 185(a) obviously presents no hurdle to the grievance procedure. Neither does the question of the standing of certain parties not members of PMTA allegedly not parties to the contract. These parties argue that the shipping agents that are parties to the

contract acted as both principals to the contract and agents in behalf of those plaintiffs not expressly made a party to the contract. This we deem a question of the interpretation of the agreement, involving as it does the intention of the parties and therefore is one for the grievance procedure. Cf. Restatement of Agency 2d § 302 (1958). The third issue is also one for determination in the grievance proceedings.

Defendants' fourth argument is that because the activity of the defendants was protected under Sections 7 and 8 of the Labor Management Relations Act, their activity may not be the basis of an action for damages. It should be noted that although the defendants argue that the activity which is the subject of the complaint—striking in violation of the collective bargaining agreements—is protected, the facts are not sufficiently developed for a determination of the nature of the activity complained of. For example, it is not clear why defendants stopped work on the waterfront, what activities they engaged in, nor at what parties their activities were aimed. Cf. Labor Management Relations Act, as amended, 1959, § 8(b) (4), 29 U.S.C.A. § 158(b) (4).

Passing this problem, we go on to decide whether the claim of protected activity is an impediment to the grievance proceedings. Because the dispute will be submitted to *arbitration* a holding regarding this court's jurisdiction is now unnecessary. We refrain from deciding now whether the nature of defendants' activity prevents this *court* from entertaining the present action.

■ We hold that *if* the defendants bargained away their right to engage in the activity complained of, they cannot then seek the protection of Section 7 to prevent the other parties to the contract from enforcing the agreement through the grievance procedure.[5]

4. See American Auto Ins. Co. v. Indemnity Ins. Co., 108 F.Supp. 221 (E.D.Pa., 1952), aff'd. 228 F.2d 622 (C.A.3, 1956).

5. In so holding we do not presume to decide whether or not defendants' conduct *was* a breach of the collective bargaining agreement.

The policy of promoting industrial peace through encouragement of the collective bargaining process would be defeated if the parties could not be sure whether the collective bargaining agreement would be honored. See Dowd Box Co. v. Courtney, 368 U.S. 502, 509, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). When an employer and a labor union sit down at the collective bargaining table, one side will offer the other benefits in return for the promise of certain benefits from the latter. Put another way, the relinquishment by one side of certain rights is the *quid pro quo* for certain concessions made by the other. Cf. United Steelworkers v. Warrior & G. Nav. Co., 363 U.S. 574, 578 n. 4, 80 S.Ct. 1347, 4 L.Ed.2d 1409, (1960). Refusal by the courts to permit the enforcement through the grievance procedure of an agreement that waives certain rights of each party to the agreement would be a step toward undermining the collective bargaining process. We conclude that if the union, as the collective bargaining representative of the employes, agreed to refrain from the conduct complained of in this action, whatever rights the employes had under Section 7 to engage in such activity were waived. See Armco Steel Corporation v. N. L. R. B., 344 F.2d 621 (C.A. 6, 1965). Cf. Teamsters Union v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

### ORDER

And now, this 30th day of June, 1965, it is ordered as follows:

1. The motion to dismiss of International Longshoremen's Association, AFL–CIO; Local 1291, ILA; Local 1566, ILA; Local 1242, ILA; Local 1242–1, ILA; is denied, without prejudice.

2. Proceedings in the present case are stayed pending process of the alleged disputes pursuant to the grievance procedure provided for by the respective collective bargaining agreements.