**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**E. W. BUSCHMAN CO., Respondent.**

**No. 17092.**

United States Court of Appeals
Sixth Circuit.

July 20, 1967.

Robert A. Giannasi, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy, Atty., N. L. R. B., Washington, D. C., on brief.

Arnold Morelli, Cincinnati, Ohio, for respondent, Nicholas Bauer, Cincinnati, Ohio, on brief.

Before WEICK, Chief Judge, and O'SULLIVAN and CELEBREZZE, Circuit Judges.

CELEBREZZE, Circuit Judge.

The National Labor Relations Board seeks enforcement of its Order issued on June 28, 1965, against the E. W. Buschman Company (Company). The Board found that the Company violated Section 8(a)(1) of the Act, 29 U.S.C.A. Section 158, by discharging employees Bole, Clouse and Feltner. The Board's decision and order are reported at 153 N.L. R.B., No. 65.

The Company is engaged in the manufacturing and installation of mechanical and electrical conveyors. Charles Bole, a layout man in the Company's structural steel department, had worked for the Company for eighteen years, and was an assistant shop steward for the Union. Herman Clouse, a layout man in the gravity department, had worked for the Company for twelve years, and was the chief shop steward. Bernard Feltner, a welder in the gravity department, had worked for the Company for twelve years, and was an assistant shop steward. These three stewards also served as the employee representatives on the Union Bargaining Committee.

In July 1963, the Union [1] and the Company began negotiating for a new contract to succeed the current contract which was to expire on July 23, 1963. Negotiations were held on July 16th, 18th and 23rd. At the bargaining meeting on July 23rd, Patrick Williams, a Union International Representative, joined the Union negotiations, and at this meeting the Company submitted an offer, which if accepted, would have settled the contractual issues which still remained.

On the evening of July 23rd, Williams, the International Representative, presided at a Union meeting where he submitted to the employees the offer proposed by the Company. The employees voted to reject the Company proposal. Feltner then asked for a strike vote. Williams refused to put the strike motion to a vote and adjourned the meeting. After the meeting, Stewards Bole, Clouse and Feltner met with other employees and discussed how they could exclude Williams from further contract negotiations.

The next morning, July 24, 1963, Bole prepared a petition that Williams "not be present at any future meetings or contract negotiations between the E. W. Buschman Company and Local No. 522." Most of the employees were to begin work at 8:00 a. m. By special arrangement, Clouse began work at 7:00 a. m. At 7:30 a. m., Bole took the petition to Clouse's desk where Clouse signed it as chief steward. Bole and Feltner then signed the petition as assistant stewards and seventeen additional employees signed the petition. Just before 8:00 o'clock, Bole took the petition to his desk and locked it in a drawer. Bole, during his noon hour lunch period, took the petition and placed it on a desk. Company Superintendent John Graziani and Company Attorney Nicholas Bauer saw and read the petition, then took it to Company President, Rudy Vogt. Shortly after noon, Bole, Clouse and Feltner were discharged. They were told they were being discharged for creating disunity or dissension among the employees. Two days later, the three discharged men received letters from the Company stating they were discharged for creating disunity among the employees; that they failed to remain at their work stations during working hours; that Clouse failed to do his work properly, and that Feltner refused to work overtime and tried to persuade others not to work overtime.

The Company maintained that the decision to fire the three stewards was made at 10:00 o'clock, before they had seen or read the contents of the petition. However, the record established that the

1. Local 522 of the International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO.

Company was aware prior to 10:00 a. m. on July 24th that the stewards were circulating a petition to oust Representative Williams. The Company also knew the employees had rejected their offer and they were fearful of a strike.

The Trial Examiner found that the stewards were discharged for preparing and signing the petition and procuring the signatures of other employees to the petition. From these facts, the inference was drawn that the Company discharged the stewards because they opposed the proposed contract. The discharges had the additional effect of dissipating the forces within the Union which could threaten a strike.

There was substantial evidence that the Company knew the petition was being circulated; knew the contents of the petition; knew the underlying reasons for circulating the petition, and knew that the three stewards were the motivating force for rejecting the Company's offer and excluding Williams. The findings of the Board that the discharge of the three Union stewards violated Section 8(a) (1) of the Act is both reasonable and supported by substantial evidence.

Section 7 of the Act provides that employees have the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Interference with such rights, including discharge of employees for exercise thereof, violates Section 8(a) (1). National Labor Relations Board v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298; National Labor Relations Board v. City Yellow Cab Co., 344 F.2d 575 (C.A.6, 1965); Metal Blast, Inc. v. National Labor Relations Board, 324 F.2d 602 (C.A.6, 1963); National Labor Relations Board v. Aurora City Lines, Inc., 299 F.2d 229 (C.A. 7, 1962).

In addition, the Company had shop rule No. 12 which provided:

"12. Shop Conduct:

"Conduct of a nature listed below is not permitted, and if indulged in, is considered cause for suspension or discharge: * * * 18. Soliciting or collecting contributions for any purpose whatsoever on our Company premises without the prior approval of management."

The Board's Order required the Company to cease and desist from "maintaining any rule prohibiting employees from engaging in Union solicitation on plant premises during nonworking time, including break periods."

The Company maintains that even if the employees were discharged for violating Rule 12, Rule 12 is a valid and enforceable rule. This Court, in Armco Steel Corporation v. National Labor Relations Board, 344 F.2d 621 (C.A.6, 1965), held that:

"Whatever right employees had under Section 7 to distribute union literature on company property may be waived by their collective bargaining representative. The contractual waiver of rights of equal or greater significance has been upheld."

See also National Labor Relations Board v. Gale Products, 337 F.2d 390 (C.A.7, 1964), and General Motors v. National Labor Relations Board, 345 F.2d 516 (C.A.6, 1965). Here the Local Union waived its right when the Union advised the Company by letter that it approved the Company rules. The Company's shop rules were not unilateral and were agreed to by the Union. The portion of the Board's Order invalidating this rule will not be enforced.

However, this does not invalidate the unlawful discharges. The Company maintained from the date of discharge until oral argument before this Court that the employees were not discharged because they circulated the petition in violation of shop Rule 12. This issue was raised for the first time during oral argument.

The complaint charged, and the Board found that the three shop stewards were discharged not only for violating the shop rule, but for preparing, signing and circulating the petition, protected activ-

ity under Section 7 of the Act. The thrust of the Board's finding was that the Company wanted to remove the shop stewards who opposed the proposed contract and threatened the Company with a strike. The Board found that the employees were not discharged merely because they solicited on Company premises without the prior approval of management. Consequently, enforcement of that portion of the Board's Order invalidating shop Rule 12 is denied; enforcement of the remainder of the Order is granted.