**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MID-STATES METAL PRODUCTS, INC., and Local 738, International Chemical Workers Union, AFL–CIO, Respondents.**

No. 23352.

United States Court of Appeals Fifth Circuit.

Nov. 13, 1968.

against Mid-States Metal Products, Inc., and the Chemical Workers Union.[1] The Board found the Union had violated § 8(b) (1) (A) of the Act [2] by threatening employee Willard Ray Dobbins with physical violence and discharge because of his anti-union activity, and §§ 8(b) (2) and (1) (A) of the Act by attempting to cause and causing Mid-States, the employer, to discharge Dobbins because he had engaged in activities protected by the Act. It found the employer had violated §§ 8(a) (3), (2) and (1) of the Act by discharging Dobbins at the Union's request because he had engaged in activities against the Union.

Also the Board found Mid-States violated § 8(a) (1) by promulgating and enforcing an over-broad clause in its contract with the Union prohibiting soliciting or collecting contributions, and distributing literature, on company premises.[3] The complaint did not charge the promulgation and enforcement of the rule was a violation by the Union, only by the company. With respect to this the Board ordered the company to cease and desist from:

> "Maintaining, giving effect to, or enforcing any collective-bargaining agreement provision which prohibits any employee (1) from soliciting in behalf of any labor organization other than the contracting labor organization, or from soliciting against any labor organization, where in either case the activity occurs on Company premises on non-working time; or (2) from distributing literature in behalf of any labor organization other than the contracting labor organization, or distributing literature against any labor organization, where, in either case, the activity occurs in non-working areas on non-working time."

Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., N.L.R.B., Washington, D. C., for petitioner.

J. A. Lake, Greenville, Miss., Leonard A. Keller, Detroit, Mich., Warren S. Gritzmacher, Jr., Atlanta, Ga., for respondents.

Before RIVES, COLEMAN and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The NLRB petitions for enforcement of its order, reported at 156 NLRB 90,

1. Local 738, International Chemical Workers Union, AFL–CIO.

2. 29 U.S.C.A. § 151 et seq.

3. The portion of the collective bargaining agreement headed "Shop Rules" contains the following:

> "These rules are divided into four classes. The following penalties will

generally be imposed for each vioation: * * * CLASS B-LAYOFF OF 1 DAY * * *

15. Unauthorized soliciting or collecting contributions for any purpose whatsoever on company premises.

16. Unauthorized distribution of literature, or printed matter of any description on company premises."

■ Substantial evidence on the record as a whole is more than adequate to support the findings of the Board of restraint and coercion of Dobbins in the exercise of protected activity and discharge of Dobbins at the request of the Union.

The validity of the contract provision prohibiting solicitation and literature distribution is a more substantial question. To what extent may union and employer, by action taken pursuant to their collective bargaining agreement, bar an employee, on company premises and on nonwork time, from soliciting or distributing literature in behalf of a rival labor organization or against any labor organization?

■■ The Act recognizes the right of employees "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *." 29 U.S.C.A. § 157. Such activities may be engaged in during nonworking time on company premises unless the employer can demonstrate that unusual circumstances make some limitation on the right necessary to maintain production or discipline. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); NLRB v. LeTourneau Co., 324 U.S. 793, 65 S.Ct. 982, 89 L.Ed. 1372 (1945); Brewton Fashions, Inc. v. NLRB, 361 F.2d 8 (5th Cir.), cert. denied, 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75 (1966); NLRB v. Southwire Company, 352 F.2d 346 (5th Cir. 1965); NLRB v. Walton Mfg. Co., 289 F.2d 177 (5th Cir. 1961); Cf. Republic Aluminum Co. v. NLRB, 394 F.2d 405 [5 Cir., Apr. 25, 1968, en banc.] There is no showing in the present case of any special circumstances making the limitation imposed by the contract necessary to maintain production or discipline. The blanket ban would have been invalid if promulgated by the employer alone.

We conclude that is no less so where imposed by agreement between employer and union.

■ The Act "was passed for the primary benefit of the employees as distinguished from the primary benefit to labor unions, and the prohibition of unfair labor practices designed by an employer to prevent the free exercise by employees of their wishes in reference to becoming members of a union was intended by Congress as a grant of rights to the *employees* rather than as a grant of power to the union." NLRB v. Schwartz, 146 F.2d 773, 774 (5th Cir. 1945). (emphasis in original). Accord, NLRB v. Augusta Chem. Co., 187 F.2d 63, 64 (5th Cir. 1951); NLRB v. Red Arrow Freight Lines, Inc., 193 F.2d 979, 981 (5th Cir. 1952).

■ "A union chosen for a time to be bargaining representative of a unit which includes members of other unions has no right to use its position to destroy the other unions. It must * * * secure itself in its office of representative only by the skill, efficiency, and fairness with which it executes that office." Hughes Tool Co. v. NLRB, 147 F.2d 69, 75, 158 A.L.R. 1165 (5th Cir. 1945).

■ True the union must be allowed a wide range of reasonableness in serving the bargaining unit, making concessions and accepting advantages as in the light of relevant considerations it believes to the best interest of the employees it represents. Ford Motor Company v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048, 1058 (1953). This includes the right in the union to waive some employee rights. It can be argued that no § 7 right can be waived by the union—that the ban against coercing employees in the exercise of their § 7 rights is binding on unions [§ 8(b) (1) (A)] as well as employers [§ 8(a) (1)], and if the union itself cannot violate the right it cannot waive the employee's right against union violation so as to vest itself with power to do what the statute forbids. "But the rights recognized in § 7 may be affected by a

valid collective bargaining agreement; to deny this would be to ignore not only the exclusive-representation principle of § 9(a) but the whole policy of Congress, set forth in § 1, of 'encouraging the practice and procedure of collective bargaining' and relying on such agreements for the maintenance of industrial peace * * *." NLRB v. Lundy Mfg. Corp., 316 F.2d 921, 925 (2d Cir. 1963). Therefore, we rest our decision on analysis of whether the specific § 7 rights involved may be waived by the union, and we conclude that in this case they cannot.

■ The rights to distribute materials and solicit in organizing for collective bargaining are rights of individual employees, relating to their selecting (or choosing not to select) and constantly re-evaluating their collective bargaining agent. They are to be distinguished from rights which employees acting in concert, through the collective bargaining agent, may exercise in attempts to achieve economic advantage.[4] *Mastro Plastics,* supra, and *Wagner Iron,* supra, qualify union waiver of the right to strike so as not to strip the employees of their right of self-help as a protest against unfair labor practices. In *Mastro Plastics* the Supreme Court said, *"Provided the selection of the bargaining representative remains free, such waivers [of employees' right to strike] contribute to the normal flow of commerce * * *."* 350 U.S. at 280, 76 S.Ct. at 356, 100 L.Ed. at 319 (emphasis in original).

Where union and employee interests are one it can fairly be assumed that employee rights will not be surrendered except in return for bargained-for concessions from the employer of benefit to employees. But the rationale of allowing

waiver by the union disappears where the subject matter waived goes to the heart of the right of employees to change their bargaining representative, or to have no bargaining representative, a right with respect to which the interests of the union and employees may be wholly adverse. Solicitation and distribution of literature on plant premises are important elements in giving full play to the right of employees to seek displacement of an incumbent union. We cannot presume that the union, in agreeing to bar such activities, does so as a bargain for securing other benefits for the employees and not from the self-interest it has in perpetuating itself as bargaining representative.

A waiver of the right to solicit and distribute literature does not hamper the union as it does the union's adversaries. The union can communicate through the bulletin board, union meetings and the force of status as bargaining representative, enjoying an advantage in preserving the status quo. Its adversaries will not have equal access to and communication with their fellow employees.

■ It has been held consistently that an employer commits an unfair labor practice not only by dominating a representative but by favoring or supporting a representative over a rival. NLRB v. Waterman S. S. Co., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704 (1940) (granting passes to one of two rival unions to go aboard ship to contact men); Majestic Molded Prods., Inc. v. NLRB, 330 F.2d 603 (2d Cir. 1964) (failure to answer letter from one organizer held denial of equal access); NLRB v. Yale & Towne Mfg. Co., 114 F.2d 376 (2d Cir. 1940) [one union allowed freedom in its organizational activities while activities of

---

4. There are numerous instances of valid waivers by the unions of economic weapons. NLRB v. Rockaway News Supply Co., 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953), held valid waiver of the employees' protected right to refuse to cross the picket line of another union. Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956), assumed, but did not decide, that under some conditions a union can waive employee rights to strike, but carefully construed the phrase "any strike" as not to include a strike against an unfair labor practice. The same result was reached in NLRB v. Wagner Iron Works, 220 F.2d 126 (7th Cir. 1955). But compare, NLRB v. Bell Aircraft Corp., 206 F.2d 235 (2d Cir. 1953).

other restricted.] Thus there is a policy in favor of employer neutrality when employees are exercising the basic § 7 right of choosing a representative or choosing between them.[5]

In its more recent decisions the Board has taken the position that the promulgation and enforcement of rules restricting distribution of literature and solicitation cannot validly be applied when such activities are carried on in opposition to the incumbent union. Gale Prods., 142 N.L.R.B. 1246; Armco Steel Corp., 148 N.L.R.B. 1179; General Motors Corp., 147 N.L.R.B. 509; General Motors Corp., 158 N.L.R.B. 1723.[6]

The Sixth and Seventh circuits have refused to enforce orders issued under the current Board policy. In NLRB v. Gale Prods., 337 F.2d 390 (7th Cir. 1964), denying enforcement of 142 N.L.R.B. 1246, by a divided court, the Seventh Circuit declined enforcement. The majority followed a footnote in May Dep't Stores, 59 N.L.R.B. 976, which the Board itself was no longer following. Relying on *Gale* the Sixth Circuit refused to enforce in Armco Steel Corp. v. NLRB, 344 F.2d 621 (6th Cir. 1965), denying enforcement of 148 N.L.R.B. 1179,[7] and again, on the authority of *Armco,* declined enforcement in General Motors Corp. v. NLRB, 345 F.2d 516 (6th Cir. 1965), denying enforcement of 147 N.L.R.B. 509. These cases may be explained in part by the fact that the rules were enforced uniformly against all employees, while in the present case the Trial Examiner found the company's position was that it could enforce or not enforce as it chose. In *Armco* the court considered relevant an offer to prove alternative means of communication. But our reasons for adhering to the position of the Board rather than these cases is more basic than the factual differences. We do not agree with the premise of *Gale* that "the contract provisions here assailed did not strip the employees of fundamental rights guaranteed by the Act." 337 F.2d at 392.

> "The right of freedom to organize belongs to dissidents as well as the bargaining agent, and limiting its exercise by no-solicitation agreements, as the one before us, tends to smother competitive union organizational activity and accordingly militates against the purposes of the Act."

Ibid. (Kiley, J., dissenting). We believe the individual organizational rights at issue, guaranteed by the Act, are too fundamental to be contracted away by the union as was here done. We have no doubt that a bilateral company-union limitation may be agreed upon and maintained if there is proof of unusual circumstances as required to make valid a prohibition unilaterally imposed by the company. But there was no such proof in this case.[8]

The Board order is enforced.

5. See also International Ass'n of Machinists, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940); NLRB v. Park Edge Sheridan Meats, Inc., 323 F.2d 956 (2d Cir. 1963); NLRB v. John Engelhorn & Sons, 134 F.2d 553 (3d Cir. 1943); NLRB v. Gluek Brewing Co., 144 F.2d 847 (8th Cir. 1944).

6. Earlier Board cases were to the contrary. May Dep't Stores Co., 59 N.L.R.B. 976; Fruitvale Canning Co., 90 N.L.R.B. 884; Clinton Foods, Inc., 112 N.L.R.B. 239; Cf. North American Aviation, Inc., 56 N.L.R.B. 959.

7. See also Getreu v. Armco Steel Corp., 241 F.Supp. 376 (S.D. Ohio 1964).

8. While we do not consider it determinative we note that this case arose in Mississippi, a right-to-work state, Miss. Code Ann. § 6984.5 (Supp.1966), while *Gale* and *Armco* did not.