Gilbert TUCKER, Lucille Tucker, Moses Katcher, Albert Segal and Adelaide Segal, Plaintiffs,

v.

ARTHUR ANDERSEN & CO., Defendant-Appellant.

ARTHUR ANDERSEN & CO., Defendant, Third-Party Plaintiff-Appellant,

v.

Joseph A. BONURA, Empire National Bank (as successor in interest to County National Bank), Lynda Dick (as Executrix of the Estate of Jack R. Dick), Aristocrat Angus Ranch, Ben R. Houston, and Charles D. Alexander, Third-Party Defendants,

Herman L. Meckler,
Third-Party-Defendant-Appellee.

No. 412, Docket 80–7632.

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1980.

Decided March 12, 1981.

722

Peter Fleming, Jr., New York City (John E. Sprizzo, T. Barry Kingham, Mark D. Speed, Curtis, Mallet-Prevost, Colt & Mosle, New York City, Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., on the brief), for defendant-appellant.

Daniel J. Brooks, New York City (Layton & Sherman, New York City, on the brief), for Herman L. Meckler.

Before MOORE, NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

This is an appeal from a judgment in one of several lawsuits arising out of the bankruptcy of Bermec Corporation ("Bermec"). Defendant-third-party-plaintiff Arthur Andersen & Co. ("Andersen") challenges an order of the United States District Court for the Southern District of New York, Henry F. Werker, *Judge*, granting summary judgment dismissing its third-party complaint against Herman L. Meckler ("Meckler"), Bermec's former chairman and chief executive officer, on grounds of collateral estoppel. For the reasons below, we reverse.

## FACTS

The lawsuits relate to the alleged embezzlement by Jack R. Dick prior to July 1968 of substantial amounts of money from Black Watch Farms, a cattle tax shelter.[1] From 1961 to 1968 Black Watch Farms was

---

1. Dick is alleged to have embezzled approximately $3,000,000 from Black Watch through a series of schemes that predated any negotiations between Black Watch Farms and Bermec. Dick submitted inflated invoices for livestock purchases, forged his suppliers' endorsements on cashiers checks, and diverted the proceeds for his own use. Dick also made excessive warranties and representations to customers of Black Watch, which exposed Black Watch to large potential liabilities.

a New York limited partnership engaged in buying, breeding, and selling purebred Aberdeen Angus cattle for its own account and the accounts of others. Dick was the principal stockholder, president, and chief executive officer of B. W. Farms, Inc., a corporation that owned a 50% equity interest in Black Watch Farms as its general partner, and an additional 7% interest as a limited partner.

On July 11, 1968, pursuant to an agreement of June 21, 1968, Bermec, through its subsidiary Black Watch Farms, Inc. (hereinafter sometimes "Black Watch"), acquired a controlling interest in Black Watch Farms (the limited partnership) by purchasing the general partner's interest and 14% of the limited partners' interests, in exchange for a substantial amount of Bermec stock. On September 11, 1968, Andersen certified that the financial statements of Bermec and Black Watch Farms, Inc. for the fiscal year ending June 30, 1968, fairly presented the financial positions of those firms in accordance with generally accepted accounting principles. Between December 1968 and February 1969, Black Watch Farms, Inc. acquired the remaining limited partnership interests in Black Watch Farms.

Sometime during 1970 it came to light that Black Watch's cattle inventory and accounts and notes receivable were greatly overstated, and that it had cash flow problems that were insurmountable. In September 1970, Black Watch petitioned for an arrangement under Chapter XI of the Bankruptcy Act, and in April 1971 was adjudicated a bankrupt. Subsequently Bermec itself filed a petition for reorganization under Chapter X of the Bankruptcy Act.

Meckler was chairman and chief executive officer of Bermec from September 1967 through 1970, and chairman of Black Watch from 1968 through 1970.

## A. *The Present Action*

The present action was commenced against Andersen in 1973 by and on behalf of persons who purchased Bermec securities between September 26, 1968, and November 1, 1969. The complaint, invoking the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.* (1976) ("1933 Act"), and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* (1976) ("1934 Act"), charged Andersen with fraud in connection with its certification of the Bermec and Black Watch financial statements for the year ending June 30, 1968. Plaintiffs alleged that if Andersen had used proper auditing procedures it would have discovered Dick's embezzlement and would have known that the Bermec and Black Watch financial statements materially overstated the net income of these corporations. Plaintiffs claim that they purchased Bermec securities at inflated prices in reliance on the false financial statements certified by Andersen. Andersen is the only defendant in this action.

Andersen filed an answer controverting the central allegations of the complaint, and, pursuant to Fed.R.Civ.P. 14(a) ("Rule 14(a)"),[2] filed third-party complaints against Meckler, Empire National Bank ("Empire"),[3] and others. Andersen alleged that Meckler had knowledge prior to July 1968 of Dick's defalcations, and that he both concealed this information from Andersen and made misrepresentations to it. Andersen sought indemnification or contribution from Meckler and others as follows:

> 38. In the event defendant Andersen is held liable to plaintiffs for damages arising from Andersen's alleged failure to

---

**2.** Rule 14(a) provides in pertinent part as follows:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. . . . The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the

> subject matter of the plaintiff's claim against the third-party plaintiff . . . .

**3.** Empire was the successor in interest to a bank that had issued the cashiers checks on which Dick was alleged to have forged certain signatures. It was alleged that bank employees had actively participated in Dick's embezzlement scheme, and that the bank had investigated and had improperly concealed its information as to the defalcations.

discover, in connection with its examination of Black Watch Farms' financial statements for the year ending June 30, 1968, the embezzlement or misappropriation of funds by Dick (as described in Paragraph 14 herein) or the claims or potential claims by herdowner-customers (as described in Paragraph 17 herein), then Andersen is entitled to recover such damages or to obtain contribution from one or more or all of third-party defendants Bonura, Empire National Bank, Dick and Meckler by reason of their fraud and deceit upon Andersen, as hereinafter set forth.

(Third-Party Complaint ¶ 38.)

In 1980 Meckler moved for summary judgment on the basis of res judicata and collateral estoppel as a result of a jury verdict and judgment in his favor in another action arising out of the Black Watch-Bermec troubles, *State Mutual Life Assurance Co. v. Arthur Andersen & Co.*, 71 Civ. 4036 (S.D.N.Y.), aff'd, 581 F.2d 1045 (2d Cir. 1978) ("*State Mutual*" action).[4]

### B.  The State Mutual Action

The *State Mutual* action was commenced against Andersen in September 1971 by four insurance companies ("insurance companies") that had made loans to Black Watch between November 22, 1968, and early 1970 totaling approximately $10 million. Alleging violations of § 17(a) of the 1933 Act and § 10(b) of the 1934 Act, these plaintiffs charged that Andersen, in auditing Black Watch for the fiscal years ending June 30, 1968, and June 30, 1969, knew or should have known that the Bermec and Black Watch financial statements it certified were materially false and misleading in not disclosing Dick's defalcations.

Andersen, initially the only defendant sued by the insurance companies, denied the central allegations of the complaint, and filed a third-party complaint against Meckler, Empire, and others. Andersen alleged that Meckler had knowledge of Dick's defalcations, and that he both concealed them

from Andersen and made misrepresentations to it. Andersen sought indemnification or contribution as follows:

41. In the event defendant Andersen is held liable to plaintiffs State Mutual, Citizens Mutual, Beacon Mutual and Worcester Mutual for damages arising from Andersen's alleged failure to discover, in connection with its examination of Black Watch Farms' financial statements for the year ending June 30, 1968, the embezzlement or misappropriation of funds by Dick (as described in Paragraph 14 herein) or the claims or potential claims by herdowner-customers (as described in Paragraph 17 herein), then Andersen is entitled to recover such damages from one or more or all of third-party defendants Bonura, Empire National Bank, Dick and Meckler by reason of their fraud and deceit upon Andersen, as hereinafter set forth.

(*State Mutual* Third-Party Complaint ¶ 41.)

The third-party defendants moved to dismiss Andersen's third-party complaint for failure to state a claim. Judge McLean, recognizing that allowing a person who has violated the securities laws to obtain complete reimbursement for a judgment against him would be inconsistent with the policies underlying those laws, *Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2d Cir. 1969), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970) ("*Globus I*"), ruled that Andersen had failed to state a claim for indemnification. *State Mutual Life Assurance Co. v. Arthur Andersen & Co.*, Fed.Sec.L.Rep. (CCH) ¶ 94,543 (S.D.N.Y.1972). He ruled, however, that the federal securities laws recognize a right to contribution among violators of those laws, *Globus, Inc. v. Law Research Service, Inc.*, 318 F.Supp. 955 (S.D.N.Y.1970), aff'd on opinion below, 442 F.2d 1346 (2d Cir.), cert. denied, 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed.2d 254 (1971) ("*Globus II*"), and that the right to contribution could properly be asserted in a third-party complaint pursu-

---

4.  The judgment in *State Mutual* having been entered long after Meckler filed his answer to the third-party complaint, he moved pursuant to Fed.R.Civ.P. 15(d) to supplement his third-party answer to assert these affirmative defenses. That motion was duly granted.

ant to Rule 14(a), even though plaintiff has sued only one of the alleged wrongdoers. *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809 (D.Colo.1968), *rev'd in part on other grounds*, 435 F.2d 1223 (10th Cir. 1970). Hence Judge McLean ruled that at least as to plaintiffs' federal claims, Andersen had properly stated a claim for contribution by the third-party defendants with respect to any payment the plaintiff insurance companies might recover from Andersen.[5]

Subsequently the *State Mutual* plaintiffs filed complaints directly against Empire and Meckler as allowed by Rule 14(a). The latter complaint alleged that prior to the November 1968 loans Meckler knew of Dick's embezzlement, that he had a special duty to the *State Mutual* plaintiffs to disclose such information, that they relied on Meckler's representations as to Black Watch's financial situation in making loans, and that but for Meckler's representations they would not have made those loans. In answer to the *State Mutual* plaintiffs' complaint, Meckler denied that he had failed to disclose to the insurance companies any material facts known to him, denied knowledge as to whether or not the insurance companies had relied on him, and denied that his acts or statements resulted in loss to them.

. The *State Mutual* case was tried before Judge Werker and a jury, in a trial that lasted seven months. At trial, Meckler testified to the circumstances and timing of his discovery of Dick's defalcations. He contended that although he had inklings in November 1968 that there were irregularities, it was not until April 1969 that he became aware that millions of dollars were involved. At the close of the evidence

Judge Werker instructed the jury on the myriad claims, third-party claims, and cross-claims.[6] As to Andersen's claims for contribution, Judge Werker instructed the jury as follows:

Of course, if you find that none of the defendants or only one of the defendants are liable to the plaintiffs then you need not consider the question of contribution as between these three defendants.

However, if you find that any or all of Andersen, Empire or Meckler are not liable to plaintiffs, then I instruct you that as to that defendant or those defendants who you have found not liable, you must also return a verdict in their favor on all cross-claims asserted by any other defendants.

In other words, if you should find that any or all of defendants Andersen, Empire and Meckler are not liable to plaintiffs, then you must return a verdict in favor of each defendant you find not liable on all claims against that defendant.

(Trial Transcript at 13985–86). No part of this instruction was objected to by any party. The first quoted paragraph had been requested by Andersen.

After twenty-one days of deliberations, the jury returned a verdict in favor of the plaintiffs against Empire in the amount of $2,700,000 plus interest from September 1, 1970, and a verdict in favor of Meckler against the plaintiffs. The jury deadlocked 4–2 in favor of the plaintiffs against Andersen.

Because of the jury's verdict in favor of Meckler against the plaintiffs, Judge Werker, consistent with the instructions on contribution quoted above, granted judgment pursuant to Fed.R.Civ.P. 54(b) and 58 dis-

---

**5.** In the present action, third-party defendant Empire National Bank made a similar motion to dismiss Andersen's third-party complaint for failure to state a claim. This motion met with a similar fate, as then-District Judge Gurfein ruled that although Andersen could not be indemnified it might be entitled to contribution. Fed.Sec.L.Rep. (CCH) ¶ 94,544 (S.D.N.Y.1974).

**6.** The original complaint asserted 20 claims for relief against Andersen. Andersen, as describ-

ed, filed a third-party complaint against Dick, Joseph A. Bonura, Meckler, and Empire, seeking contribution in the event of a recovery by plaintiffs against Andersen. Empire and Dick counterclaimed against Andersen. Plaintiffs filed complaints directly against Meckler and Empire. Meckler cross-claimed against Andersen. Empire cross-claimed against Meckler, Andersen, Bonura, and Dick. And so forth.

missing Andersen's third-party complaint against Meckler. Andersen appealed the dismissal, not contending that the instructions were erroneous, but arguing only that the plaintiffs' summation had effectively exonerated Meckler from liability and focused on the claims against Empire and Andersen. This Court affirmed the dismissal stating as follows:

> This case went to the jury with Judge Werker's instruction that a verdict in favor of any defendant as against plaintiffs would free that defendant from liability on any other defendants' cross-claims. That instruction was fully consistent with a request to charge submitted to the court by Andersen, and no objection was made by any party to it. Furthermore, the jury's verdict was fully consistent with the dismissal of all claims against Meckler. Andersen, not having objected before, cannot now impeach that verdict on the dubious ground that summation argument, made without objection, somehow renders that verdict suspect.

*State Mutual Life Assurance Co. v. Arthur Andersen & Co., supra,* 581 F.2d at 1052 (footnotes omitted).

C. *Summary Judgment in the Present Action*

In support of his motion for summary judgment in the present action on grounds of res judicata, Meckler contended that Andersen's present claims against him were identical to those asserted against him by Andersen in the *State Mutual* action, which had been decided against Andersen on the merits. The district court ruled, however, that res judicata was inapplicable because Andersen's claims were not identical. The court noted that the *State Mutual* plaintiffs were insurance companies that had loaned funds to Black Watch, whereas the plaintiffs in the present action were stockholders who purchased Bermec securities, and

> an examination of both third-party actions reveals that Andersen's claim over against Meckler is predicated upon Andersen's liability to plaintiffs in the respective actions. Therefore, the causes of action[s] are necessarily dissimilar there-

by precluding the invocation of the *res judicata* defense.

(Opinion at 7–8.)

Meckler also sought summary judgment on the alternative ground that the judgment in his favor in *State Mutual* collaterally estopped Andersen from relitigating here the issue of whether Meckler had knowledge of Dick's embezzlements. He contended that his defense in *State Mutual* was based on a lack of knowledge, that that issue was fully litigated there, and that the jury, in order to find in his favor against the *State Mutual* plaintiffs, must have found that he lacked knowledge. The district court accepted this contention on the theory that Meckler's knowledge was critical to both actions:

> That issue was litigated in *State Mutual.* Moreover, determination of that issue, without which the jury could not have found in Meckler's favor, was necessary to the outcome of the *State Mutual* case. Since there is no consistent way for a fact-finder in this case to find in Andersen's favor against Meckler without thereby negating the jury's determination in *State Mutual,* the doctrine of collateral estoppel requires that Meckler be granted summary judgment dismissing Andersen's third-party complaint against him.

(*Id.* at 8–9).

The court thus granted summary judgment on grounds of collateral estoppel and directed that a final judgment dismissing Andersen's third-party complaint against Meckler be entered pursuant to Fed.R. Civ.P. 54(b). This appeal followed.

## DISCUSSION

We agree with Judge Werker's conclusion that res judicata was inapplicable, but we conclude that collateral estoppel was also inapplicable. Accordingly, we reverse and remand for trial.

A. *Res Judicata*

The principle of res judicata bars a subsequent suit between the same parties or their privies where a prior action has

resulted in a judgment on the merits of the same cause of action. *Expert Electric Inc. v. Levine,* 554 F.2d 1227, 1232–33 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Res judicata prevents the subsequent litigation of any defense or ground for recovery that was available to the parties in the original action, whether or not it was actually litigated or determined. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Schmieder v. Hall,* 545 F.2d 768, 771 (2d Cir. 1976), *cert. denied,* 430 U.S. 955, 97 S.Ct. 1601, 51 L.Ed.2d 805 (1977). The fact that several operative facts may be common to successive actions between the same parties does not mean that a judgment in the first will always preclude litigation of the second. Whether or not the first judgment will have preclusive effect depends on whether a different judgment in the second action would impair rights or interests created by the first judgment, whether the same evidence is necessary to support both claims, and whether the essential facts in the second were present in the first. *Herendeen v. Champion International Corp.,* 525 F.2d 130, 133–34 (2d Cir. 1975); *McNellis v. First Federal Savings and Loan Ass'n,* 364 F.2d 251, 255–56 (2d Cir.), *cert. denied,* 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966).

On the surface, Andersen's claims against Meckler in the *State Mutual* action and the present action appear to be the same. The language of the claims in both actions asserts that Meckler is liable to Andersen by reason of his "fraud and deceit upon Andersen." (Compare ¶ 38 of the third-party complaint in the present action, *supra,* with ¶ 41 of the third-party complaint in the *State Mutual* action, *supra.*). If these were simply claims that Meckler was liable to Andersen for its damages on account of such fraud, a judgment on the merits of one would doubtless bar litigation of the other. The third-party complaints are not, however, limited to simple fraud claims; each asserts that if Andersen is found liable to the plaintiffs in that action, Meckler is liable to Andersen in contribution. In each action Andersen was properly found to have stated a valid claim for contribution.[7] And Andersen's claim against Meckler in *State Mutual* was presented to the jury as one for contribution.

Andersen's right to obtain contribution from Meckler does not depend on whether Meckler defrauded Andersen. It depends instead on whether Meckler breached a duty to the plaintiffs. Accordingly, in the *State Mutual* action, Judge Werker in-

7. Meckler has previously contended that construction of Andersen's third-party complaint as a claim for contribution was improper. It argued that a contribution claim depends on the third-party defendant's being liable to the plaintiff and pointed out that plaintiffs in the present action have not sued Meckler. Although originally Rule 14(a) allowed a defendant to implead a person who might be liable to the defendant "or the plaintiff," the quoted language was deleted by amendment in 1946, and the Rule now allows impleader only of persons who are or may be liable to the defendant. *See* note 2 *supra.* The argument that Andersen could not implead Meckler for contribution in the present action (which now appears to have been abandoned by Meckler—see letter dated December 1, 1980, from Meckler's counsel to the Clerk of this Court), has no merit.

We agree with the pretrial rulings in the present case and in *State Mutual* (*see* note 5, *supra,* and accompanying text) that under the securities laws, a person who has defrauded the plaintiff in violation of those laws may be

liable for contribution to another person who has similarly defrauded the plaintiff. *Heizer Corp. v. Ross,* 601 F.2d 330 (7th Cir. 1979); *Globus II, supra; deHaas v. Empire Petroleum Co., supra.* The goal of the securities laws is not just to compensate persons who have been defrauded but also to deter violations of those laws. This goal is advanced by a recognition of liability for contribution among joint offenders and by a recognition that that liability does not depend on the plaintiff's having elected to proceed against all those who have offended. Thus we reject the contention that Andersen may not, as a matter of law, obtain contribution from Meckler. Nor do we find any merit in Meckler's suggested rule that a claim for contribution can only be pursued in a separate lawsuit. Such a rule would promote nothing so much as judicial inefficiency. So long as the substantive right to contribution exists, as it does here under the securities laws, Rule 14(a) allows the defendant to implead any person who may be liable to it on that theory. *See* 3 Moore's *Federal Practice, supra,* ¶¶ 14.03, 14.-10, 14.11.

structed the jury that any defendant who was not found liable to the insurance companies would not be liable for contribution. The jury found Meckler not liable to the insurance companies, and it was on this basis that Andersen's third-party complaint against him was dismissed. Andersen's complaint against Meckler in the present action is similar but not the same. It seeks contribution from Meckler in the event that Andersen is found liable to the plaintiffs who purchased Bermec securities; and Andersen cannot recover contribution here unless Meckler is found to have breached his duty to *these* plaintiffs.

Plainly these claims depend on Andersen's and Meckler's relationships with two distinct groups of plaintiffs. Although much of the evidence on the two sets of claims would overlap, the factual matrices to be proven by the two groups are not identical. For example, the insurance companies sought to prove that they relied on Meckler's representations. Determination of this fact would have no bearing on whether or not purchasers of stock relied on the same representations by Meckler. Hence a finding that Meckler did not defraud certain persons is not inconsistent with a finding that he did defraud others. We therefore concur in the district court's conclusion that Andersen's allegations against Meckler in *State Mutual* and the present action do not present the same claims. The court properly refused to grant Meckler summary judgment on grounds of res judicata.

## B. *Collateral Estoppel*

We do not agree, however, with the conclusion that collateral estoppel was applicable. Principles of collateral estoppel may bar the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action. *Lawlor v. National Screen Service*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen, supra*, 333 U.S. at 598, 68 S.Ct. at 719. In order to operate as an estoppel, however, the determination of

the issue must have been essential to the judgment. *Gulf Oil Corp. v. Federal Power Commission*, 563 F.2d 588, 602 (3d Cir. 1977), *cert. denied*, 434 U.S. 1062 (1978); *Bloch v. Mill Factors Corp.*, 119 F.2d 536, 538 (2d Cir. 1941); IB Moore's *Federal Practice* ¶ 0.443[1] at 3901 (2d ed. 1980). The Restatement (Second) of Judgments § 68 (Tent.Draft No. 4, 1977), states the rule as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

The basis for Meckler's collateral estoppel argument is the contention that the jury in *State Mutual* found that he did not know in November 1968 that Dick had embezzled funds. The district court accepted this premise, finding that "the jury could not have found in Meckler's favor" without determining that he lacked knowledge of Dick's defalcations. It is obvious that this question was actually litigated; Meckler's testimony emphasized his assertion that he was unaware until the spring of 1969 of the amount and extent of Dick's defalcations. It is not clear, however, that the question was actually decided or was essential to the judgment, because Meckler's knowledge was not the only issue for the jury and the jury's verdict was a general one.

Meckler's answer placed in issue not only the question of his knowledge, but as well the questions of whether the insurance companies relied on his representations and whether any representations by him caused their losses. We see no evidence that those issues were not submitted to the jury. Judge Werker's charge with regard to State Mutual's claims against Meckler did not suggest that the reliance and causation elements had been conceded. For example, after stating that Meckler had not been a party to the 1968 loan agreement, the court continued as follows:

> Plaintiffs claim, however, that there was a substantial relationship between them

and Meckler, based in part upon prior, mutually successful business dealings between State Mutual and Meckler not related to Black Watch and that State Mutual, as a result of such past experience, had to Meckler's knowledge, a high regard for Meckler's integrity and business judgment. Plaintiffs thus contend that they looked to Meckler to provide them with all pertinent information he had concerning Black Watch in the conduct of the negotiations for the 1968 loan .... (Trial Transcript at 13885). We find in the record no intimation that the jury was not to determine the issues of reliance and causation.

The jury was not asked, however, to render a special verdict in the form of special findings on each issue of fact, or to answer interrogatories as to specific issues of fact. It was instructed to, and did, return a general verdict. When a general verdict has been rendered in favor of a *plaintiff*, it must be inferred that the jury has made factual determinations in plaintiff's favor on each element necessary to his claim:

> If several issues are litigated in an action, and a judgment cannot properly be rendered in favor of one party unless all of the issues are decided in his favor, and judgment is given for him, the judgment is conclusive with respect to all the issues.

Restatement (Second) of Judgments, *supra*, § 68 comment *g*. When a general verdict has been rendered in favor of a *defendant*, however, a different situation exists. If several issues have been litigated, it is not known what factual issues the jury has decided, for the defendant was entitled to the verdict if the plaintiff failed to persuade the jury as to any element of his claim.

So it is in this case. Meckler had put in issue the elements of knowledge, reliance, and causation, and the jury was required to find in his favor if the insurance companies' proof was unpersuasive on any one or more of those elements. The fact that it returned a general verdict in Meckler's favor, therefore, does not mean that it found in Meckler's favor on the issue of knowledge.

Since the jury in *State Mutual* could have rendered its verdict in favor of Meckler on the basis of a resolution in his favor of other factual issues, Andersen is not collaterally estopped from relitigating the issue of Meckler's knowledge in the present action.

Reversed and remanded.