NATIONAL LABOR RELATIONS
BOARD, Petitioner,

and

District 91, International Association of
Machinists and Aerospace Workers,
AFL–CIO, Intervenor,

v.

UNITED TECHNOLOGIES
CORPORATION,
Respondent.

No. 226, Docket 82–4086.

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1982.

Decided April 21, 1983.

Mansfield, Circuit Judge, filed a dissenting opinion.

John D. Burgoyne, Asst. Gen. Counsel, N.L.R.B., Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., on the brief), for petitioner.

Edward J. Dempsey, Hartford, Conn. (Joseph C. Wells, Farmer, Wells, McGuinn & Sibal, Hartford, Conn., on the brief), for respondent.

Before LUMBARD, MANSFIELD, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The National Labor Relations Board (the "Board") petitions for enforcement of its order finding that respondent United Technologies Corporation ("United") violated § 8(a)(1) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(a)(1)(1976), by maintaining and enforcing a rule that prohibited employees from engaging in union solicitation during paid nonworking time. *See United Technologies Corp.,* 260 N.L.R.B. No. 8 (Feb. 10, 1982). United opposes enforcement on the ground that the present proceeding is barred by principles of res judicata or collateral estoppel as a result of our decision in *United Aircraft Corp. v. NLRB,* 440 F.2d 85 (2d Cir.1971) (*"United Aircraft"*). In *United Aircraft,* we upheld a Board determination that the limited no-solicitation rule maintained by United (then known as United Aircraft Corporation), which was substantially identical to the rule challenged here, was authorized under United's collective bargaining agreement with the union and did not infringe fundamental employee rights under § 7 of the Act, 29 U.S.C. § 157

(1976).[1] The outcome of the present petition for enforcement turns on whether the Supreme Court's decision in *NLRB v. Magnavox Co.,* 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974), effectively overruled our decision in *United Aircraft.* We conclude that it did not, and we deny enforcement.

## I. FACTS AND PRIOR PROCEEDINGS

### A. *Background*

United manufactures airplane engines, helicopters, electronic components, and related products at various plants. It maintains two divisions in Connecticut: the Pratt & Whitney Division ("Pratt & Whitney"), which has facilities in East Hartford, Manchester, Southington, and Middletown; and the Hamilton Standard Division ("Hamilton Standard"), which has facilities in Broad Brook and Windsor Locks. Lodge 743, International Association of Machinists and Aerospace Workers ("IAM"), AFL–CIO, is the bargaining agent for various employees at the Windsor Locks facility run by Hamilton Standard. Lodges 700 and 1746, IAM, are the bargaining agents for various employees of Pratt & Whitney. All three lodges are affiliated with District 91, IAM, which coordinates the activities of various IAM locals.

### B. *The* United Aircraft *Decision*

In 1969, the Board heard charges against the Pratt & Whitney Division of United, filed by Lodges 700 and 1746 of District 91, growing out of United's 1968 discharge of two union stewards and suspension of a third because of their alleged solicitation of other employees for union membership during working time. The unions alleged, *inter alia,* that Pratt & Whitney had "discriminatorily, coercively and excessively enforc[ed] and administer[ed] its rule and con-

tract prohibition barring union solicitation during working hours." *United Aircraft Corp. (Pratt & Whitney Division),* 180 N.L.R.B. 278, 278 (1969). The "contract prohibition" referred to was Article IV of the 1968 collective bargaining agreement between Pratt & Whitney and Lodges 700 and 1746, which provided as follows:

> There shall be no solicitation of employees for union membership or dues conducted upon the premises of the company during working hours by the union, its representatives or by employees.

*Id.* at 288. The company rule in question listed the following practices among those that were "strictly forbidden":

> Gambling, taking orders, selling tickets, or soliciting money or any other type of solicitation.

*Id.*

After a hearing, the trial examiner found that United's discipline of the three union stewards had been unlawful because they had not violated the company's rule; but he declined to rule that the limited no-solicitation rule and contract provision had been "coercively and excessively enforc[ed]." The trial examiner found that all parties understood the concept of "working time" to include periods during which employees were not engaged in actual work but for which they were paid, *id.* at 291, and that "the Union and the Respondent ha[d] agreed to a contract provision barring solicitation of union membership or conducting union business on working time," *id.* at 290. He concluded that there was no undue restriction of fundamental employee rights:

> [T]he concept that "working time" is the equivalent of "paid time" appears to have been established as the "common law" of the shop, both by the Respondent's action and by arbitration decisions. Despite the long-continuing practice in the Respondent's plants of *tolerating or permitting*

---

1. Section 7 of the Act, 29 U.S.C. § 157, provides, in pertinent part, as follows:

    Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the

purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . . .

Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), makes it unlawful for an employer to interfere with an employee's § 7 rights.

nonunion-oriented solicitations during working time, the parties have several times executed contracts barring solicitation of union membership during working time. I do not perceive that this concession or waiver constitutes an "interference with the employees' statutory rights . . . so great as to override any legitimate reasons for upholding the waiver, or would unduly hamper the employees in exercising their basic rights under the Act." [Citation omitted.] The Union has agreed that union solicitation is to be treated differently from other types of solicitations. I cannot say, in the circumstances of this case, that it lacks capacity to make such an agreement.

As to the contention that the no-solicitation rule and contract provision were "coercively and excessively" enforced, I am persuaded that the General Counsel has not established this to be the fact. *Id.* at 291. The Board adopted the trial examiner's decision in its entirety. *Id.* at 278.

On the union's petition for review, this Court upheld the Board's determination that the limited no-solicitation rule and contract provision did not violate employees' § 7 rights. *United Aircraft, supra.* We noted that the contractual prohibition of union solicitation during working hours had appeared in United's collective bargaining agreements for many years, 440 F.2d at 95, and that the term "working hours" had been interpreted by all concerned, including an arbitrator as early as 1958, as including all time for which employees were paid, *id.* at 95–96. We concluded that "the testimony at trial, arbitration decisions, and past practice of the parties have eliminated any ambiguity that might otherwise exist" in the phrase "working hours," *id.* at 96, and that United and the union had consistently interpreted working hours to include rest periods and exclude lunch hours, *id.* at 95. Accordingly, the barring of solicitation during working hours, as so interpreted, neither deprived employees of rights that were fundamental under § 7 of the Act, nor implicated public policy concerns that were overriding, because the employees remained

"free to solicit on company property before and after work and during the lunch hour." *Id.* at 96 (footnote omitted). In light of that freedom, we concluded that it was permissible for the union to agree to the limited no-solicitation provision in the collective bargaining agreement:

> We see no reason to invalidate the clear agreement of the parties. . . . [T]here are 25,000 employees and over 500 stewards in the plants involved. The company probably considered the no-solicitation ban to be an important bargaining objective, and the agreement should not lightly be overturned.
>
> . . . As stated earlier, we do not think the ban on solicitation during working hours unduly restricts the unions' access to its members, and the isolated instances of permitted solicitation—charities and gifts—[are] not the "discrimination" with which the cases cited in the unions' brief are concerned. We therefore conclude that the Board properly found that company Rule 5 and the contract can be applied to prohibit solicitation for the union during working hours, whether or not the employee is working or resting.

*Id.* at 96–97.

We found misplaced the union's reliance on cases such as *International Association of Machinists, District 9 v. NLRB,* 415 F.2d 113 (8th Cir.1969) ("*IAM, District 9*"), and *NLRB v. Mid-States Metal Products,* 403 F.2d 702 (5th Cir.1968), which had invalidated more restrictive rules, since those cases were concerned with "broad bans on solicitation or distribution anywhere in the plant," 440 F.2d at 97 n. 9, and with "the effect of those agreements on the workers' rights to change their bargaining agent," *id.* In *United Aircraft,* we recognized that "we [were] not dealing with agreements prohibiting all solicitation on company premises, and no claim [was] made that a rival union [was] being favored." *Id.* In short, this Court upheld the determination that the limited no-solicitation rule and contract provision at issue in *United Aircraft* did not seriously dilute employees' § 7 rights.

### C. Events Leading to the Present Petition for Enforcement

The present proceeding arose out of United's interrogation and threatened discipline of two employees at the Hamilton Standard plant at Windsor Locks in 1979. Since at least 1964, Hamilton Standard's collective bargaining agreements with Lodge 743 of District 91 have included in Article IV a limited no-solicitation clause identical to that at issue in *United Aircraft.*[2] Since at least 1964, Hamilton Standard has also maintained a limited no-solicitation rule ("rule 5") identical in substance to that challenged in *United Aircraft.*[3]

In January 1979, Hamilton Standard dismissed two employees for alleged solicitation of union membership during paid coffee breaks. Following the discharges, which are not at issue in the present proceeding,[4] a third employee, Lay, requested permission under rule 5 to solicit funds for the families of the discharged employees. The request was denied, and Lay was questioned by internal security agents regarding the request. A fourth employee, Sullivan, was warned that he would be disciplined for taking up a collection for the dischargees' families. As a result of the company's treatment of Lay and Sullivan, District 91 filed a charge with the Board against United in July 1979, alleging "[t]hat the Company is maintaining and enforcing a no-solici-

tation rule which unduly infringes on employee Section 7 rights to engage in concerted activity during non-working time."

After a trial, an administrative law judge ("ALJ") concluded that the validity of the no-solicitation rule had been fully litigated in the *United Aircraft* proceeding, and that District 91's challenge to the rule was foreclosed by principles of res judicata. He recommended, therefore, that the complaint be dismissed.

The Board rejected the ALJ's conclusion. *United Technologies Corp.,* 260 N.L.R.B. No. 8 (Feb. 10, 1982). It stated that *United Aircraft* had been based on the premise "that a union can waive employees' right to engage in all solicitation," *id.* at 6; *but see* note 8 *infra,* and found that the Supreme Court's 1974 decision in *NLRB v. Magnavox Co., supra,* 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358, had overruled that proposition. The Board concluded that *Magnavox* was an intervening change in the law that made the doctrines of res judicata and collateral estoppel inapplicable to the instant charge.

On the merits of the charge, the Board stated as follows:

> We find that Respondent's maintenance of rule 5, which prohibits employee solicitation during paid nonworking time violates the well-established standards

---

**2.** Article IV of the 1978 agreement, for example, provides in pertinent part, as follows:

There shall be no solicitation of employees for union membership or dues conducted upon the premises of the company during working hours by the union, its representatives or by employees. . . .

**3.** Prior to 1978 Hamilton Standard's rule was also identical in form to the rule at issue in *United Aircraft.* On January 26, 1978, Hamilton Standard issued revisions to its general rules, stating that the revisions were "essentially the same rules under which we have lived for years but modified in certain respects to conform to current practice." (Hamilton Standard General Notice, Jan. 26, 1978.) The revised version of rule 5 read as follows:

The following practices are prohibited:
. . . .

5. Gambling, taking orders, selling tickets, or any type of unauthorized solicitation on

company property. This prohibition includes soliciting employees for union membership, including the distribution and collection of dues assignment cards or money for union dues, initiation fees, or assessments during working hours.

The administrative law judge in the present case found that this formulation merely rephrased the original rule and did not alter its content. The Board did not disturb this finding.

**4.** After a grievance proceeding, the discharged employees were reinstated. The arbitrator found that (1) in fact no solicitation had occurred, and (2) since other forms of solicitation were generally not met with the sanction of discharge, United had enforced its limited no-solicitation rule "in a manner which discriminated against Union solicitation." The arbitrator did not reach the issue of the validity of the rule.

which govern the permissible breadth of solicitation limitations. *Republic Aviation Corporation v. N.L.R.B.,* 324 U.S. 793 [65 S.Ct. 982, 89 L.Ed. 1372] (1945); *Stoddard-Quirk Manufacturing Co.,* 138 NLRB 615 (1962). That Respondent's rule prohibits union solicitation during "working hours" establishes its facial invalidity. Moreover, Respondent has admitted that the rule applies to authorized break periods for which employees are paid. In sum, we conclude that this rule is an impermissible infringement on employees' Section 7 rights. In accord with *N.L.R.B. v. Magnavox Co., supra,* we also note that Respondent's ban on solicitation is not rendered lawful by the provisions of Respondent's collective-bargaining agreement with the Union. Accordingly, we conclude that Respondent's maintenance, and its enforcement . . . against employees Lay and Sullivan, of a rule restricting employee solicitation during all paid nonworking time unlawfully interfered with employees' Section 7 rights and violated Section 8(a)(1) of the Act. 260 N.L.R.B. No. 8, at 6–7 (footnotes omitted). By way of remedy, the Board ordered United to (1) cease and desist from maintaining and enforcing its no-solicitation rule, or otherwise interfering in employees' exercise of their collective bargaining rights; (2) rescind the rule; and (3) post an appropriate notice at the Windsor Locks facility. *Id.* at 8–9.

This petition for enforcement followed.

## II. DISCUSSION

The Board seeks enforcement of its order on the ground that its findings are supported by substantial evidence. United contends that, regardless of the evidence, enforcement should be denied on grounds of res judicata or collateral estoppel. It argues that principles of res judicata apply because the parties and the issues are the same as those before this Court in *United Aircraft,* and it points out that the res judicata effect of a judgment is not altered by intervening changes in the law. *See, e.g., Federated Department Stores v. Moi-*

*tie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The Board contends that principles of res judicata are inapplicable because, although the parties and the legal questions here are the same as those before the court in *United Aircraft,* the transaction at issue here is different, and hence only principles of collateral estoppel could be applied. It argues further that the doctrine of collateral estoppel does not give preclusive effect to previous decisions when there has been a significant intervening change in the law. The Board contends that *Magnavox* is such a significant change; United contends that it is not.

■ We conclude that, although our decision in *United Aircraft* is not res judicata, principles of collateral estoppel bar enforcement of the Board's present order since *Magnavox* did not alter the pertinent principles established by *United Aircraft.*

### A. Res Judicata

■ The basic principles of res judicata are familiar. "[A] valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand . . . ." 1B J. Moore & T. Currier, *Moore's Federal Practice* ¶ 0.411[2], at 1281 n. 1 (2d ed. 1982). Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues that could have been raised in the adjudication of that claim. *Id.* ¶ 0.405[3], at 631–32. In the present case, there is no question that the *United Aircraft* decision was a final judgment on the merits between the same parties now before us. The only disputed question is whether the claim in the present case is the same one that was decided in *United Aircraft.*

■ It is undisputed that the present United rule and the present collective bargaining agreement provision are the same as the rule and contract provision at issue in *United Aircraft.* But the circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in

the second is the same claim that was litigated in the first, and that litigation of the second is therefore precluded by the judgment in the first. Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first. *See, e.g., Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 726–28 (2d Cir. 1981); *Herendeen v. Champion International Corp.,* 525 F.2d 130, 133–34 (2d Cir.1975); Restatement (Second) of Judgments § 24(1) (1982).

We have little difficulty in concluding that the claim at issue in the present proceeding is not the same claim that was adjudicated in *United Aircraft. United Aircraft* arose out of charges that in 1968, United had discharged two union stewards and suspended another for soliciting other employees, during working hours at certain of its Pratt & Whitney plants, to join the union. The present proceeding arises out of charges that in 1979, United interrogated and threatened to discipline employees at a Hamilton Standard plant when they sought to solicit funds for the families of two discharged employees. Thus, the events giving rise to the two proceedings occurred at different places, and more than a decade apart; they concerned different employees engaged in different acts; and they involved different employer conduct in response to those acts. Plainly the claim at issue here could not have been adjudicated on the basis of the events, facts, or evidence involved in *United Aircraft. Cf. Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327–28, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955) (judgment in antitrust suit does not preclude later suit based on " 'essentially the same course of conduct,' " where conduct in second suit postdated the first judgment); *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). Accordingly, we conclude that the

present proceeding is not barred by res judicata.

## B. *Collateral Estoppel*

■ The doctrine of collateral estoppel, however, may be applicable despite the differences between the two claims. That doctrine normally will bar the relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim. *E.g., Lawlor v. National Screen Service Corp., supra,* 349 U.S. at 326, 75 S.Ct. at 867; *Commissioner v. Sunnen, supra,* 333 U.S. at 601, 68 S.Ct. at 721; *Tucker v. Arthur Andersen & Co., supra,* 646 F.2d at 728; Restatement (Second) of Judgments § 27. We find in the present proceeding several issues—some factual and some legal—that were necessarily litigated and decided in *United Aircraft.*

The pertinent factual issues determined in *United Aircraft* were (1) that, in light of the long history of the practices of United and the union, the term "working hours" was not ambiguous; (2) that, as United and the union well understood, "working hours" meant all time for which employees were paid, including rest periods, but did not include time spent by the employees on company property for which they were not paid, such as lunch hours; and (3) that rule 5 allowed employees to engage in union solicitations on company property before work, after work, and during the lunch hour. Given that the content of United's rule has not changed since these issues were decided in *United Aircraft,* no further litigation of these issues is permitted.[5]

Two pertinent legal issues were decided by *United Aircraft.* First, it was determined that since the rule permitted employees to engage in union solicitation on company property before and after work and at

---

5. The issues as to which an intervening change in the law may render the doctrine of collateral estoppel inapplicable are issues of law, not issues of fact. *See* Restatement (Second) of Judgments § 28(2)(b).

lunch-time, the ban on solicitation at other times did not unduly restrict the employees' fundamental rights under § 7 of the Act. Second, it was held that, given the freedom of the employees to solicit on company property before and after work and at lunchtime, the union had the power to bargain away employees' rights to engage in solicitation at other times.

These determinations of the legal issues would normally preclude the Board's conclusions in the present proceeding and thus bar enforcement of the Board's present order. It is established, however, that "a judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable." *Commissioner v. Sunnen, supra,* 333 U.S. at 600, 68 S.Ct. at 720 (footnote omitted); *accord, e.g.,* Restatement (Second) of Judgments § 28(2)(b). Thus, the preclusive effect *vel non* of *United Aircraft*'s determinations of the legal issues turns on the meaning of the Supreme Court's decision in *NLRB v. Magnavox Co.*

## C. NLRB v. Magnavox Co.

In *Magnavox,* the union challenged a company rule that prohibited employees from distributing literature anywhere on company property at any time. The no-distribution rule had been maintained for some 16 years, antedating the first collective bargaining agreement between Magnavox and the union. The collective bargaining agreement provided that the company could "issue Rules and Regulations for the maintenance of orderly conditions," and that such "rules [would] not be unfair or of a discriminatory nature." *The Magnavox Co. of Tennessee,* 195 N.L.R.B. 265, 269 (1972). The company agreed to provide

bulletin boards for the posting of union notices; another rule, not challenged, prohibited "[s]oliciting of any kind on Company Property during working hours." *Id.* at 268 n. 2. The Board found that the blanket no-distribution rule violated fundamental employee rights that could not be waived by the union in collective bargaining, and it ordered the company to cease and desist from enforcing the rule to bar solicitation for or against any union.[6] *Id.* at 265–67. The Sixth Circuit denied enforcement of the Board's order, ruling that the union could waive, and had waived, the employees' on-premises distribution rights. *Magnavox Co. v. NLRB,* 474 F.2d 1269 (6th Cir.1973). The Supreme Court reversed, upholding the Board's order. 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974).

To place in context the Supreme Court's discussion in *Magnavox,* it will be helpful to describe first the then-existing legal climate. In a series of decisions beginning with *Gale Products, Div. of Outboard Marine Corp.,* 142 N.L.R.B. 1246 (1963), enforcement denied, 337 F.2d 390 (7th Cir. 1964), the Board had adopted the view, with regard to employee activities on company property on nonworking time, that an incumbent union had the power to waive employees' rights to distribute and solicit on behalf of the incumbent union but could not waive their rights so to act on behalf of any rival union. The question of the incumbent union's power to waive employee distribution and solicitation rights divided the courts of appeals into three camps. The Fifth Circuit, in *NLRB v. Mid-States Metal Products, supra,* which involved a total on-premises ban of distribution and solicitation, agreed with the Board that the incumbent could waive employee rights of solici-

---

**6.** The Board ordered the company, in pertinent part, as follows:

"Cease and desist from maintaining, giving effect to, or enforcing any rule which prohibits employees from distributing literature in nonworking areas on nonworking time on behalf of any labor organization relating to the selection or rejection of a labor organization as the exclusive bargaining agent of the employees in a unit appropriate for collective

bargaining, or other matters related to the exercise by employees of their Section 7 rights."
195 N.L.R.B. at 267. This modified the decision of the trial examiner, who had followed prior Board doctrine by invalidating the no-distribution rule only insofar as it interfered with employee rights to distribute literature on behalf of unions other than the incumbent. *See* text *infra.*

tation and distribution in its favor but could not waive employee rights to solicit or distribute in favor of a rival:

Where union and employee interests are one it can fairly be assumed that employee rights will not be surrendered except in return for bargained-for concessions from the employer of benefit to employees. But the rationale of allowing waiver by the union disappears where the subject matter waived goes to the heart of the right of employees to change their bargaining representative, or to have no bargaining representative, a right with respect to which the interests of the union and employees may be wholly adverse. Solicitation and distribution of literature on plant premises are important elements in giving full play to the right of employees to seek displacement of an incumbent union. We cannot presume that the union, in agreeing to bar such activities, does so as a bargain for securing other benefits for the employees and not from the self-interest it has in perpetuating itself as bargaining representative.

A waiver of the right to solicit and distribute literature does not hamper the union as it does the union's adversaries. The union can communicate through the bulletin board, union meetings and the force of status as bargaining representative, enjoying an advantage in preserving the status quo. Its adversaries will not have equal access to and communication with their fellow employees.

403 F.2d at 705. The Fifth Circuit therefore enforced a Board order that invalidated the company's rule only insofar as it banned solicitation or distribution for a rival union or against the incumbent.

Other circuits rejected this bifurcated view of the union's power to waive employee rights to engage in on-premises solicitation or distribution during nonworking time, but they divided over whether the union had the power to waive totally or had no power to waive. Thus, the Eighth Circuit ruled that a no-distribution rule was invalid because the union had no power to waive employee distribution rights, either

on its own behalf or on behalf of a rival. See IAM, District 9, supra, 415 F.2d at 116. The Sixth and Seventh Circuits, on the other hand, ruled that the incumbent union had the power to waive distribution or solicitation rights as to both itself and its rivals. E.g., Armco Steel Corp. v. NLRB, 344 F.2d 621 (6th Cir.1965) (distribution); NLRB v. Gale Products, Div. of Outboard Marine Corp., 337 F.2d 390 (7th Cir.1964) (distribution and solicitation).

In Magnavox, the Board changed its bifurcated rule and adopted the Eighth Circuit's view that the union had no power to waive employee distribution rights on behalf of either itself or another union. When the Sixth Circuit persisted in its own interpretation by refusing enforcement of the Board's order in Magnavox, the Supreme Court granted certiorari because of the conflict of the Sixth Circuit's view with that of the Eighth Circuit and that of the Fifth Circuit. NLRB v. Magnavox Co., 415 U.S. at 324, 94 S.Ct. at 1101.

At the outset of its discussion in Magnavox, the Supreme Court framed the issue before it. Noting that "a ban on the distribution of union literature or the solicitation of union support by employees at the plant during nonworking time may constitute an interference with § 7 rights," id., and that the Court had previously upheld the Board in interpreting "solicitation outside working hours but on company property [to be] protected by § 7" and invalidating a rule that prohibited such solicitation, id. (citing Republic Aviation Corp. v. NLRB, 324 U.S. 793, 801–03, 65 S.Ct. 982, 987–88, 89 L.Ed. 1372 (1945)), the Court stated that "the sole issue [before it] concern[ed] the power of the collective-bargaining representative to waive those rights," 415 U.S. at 325, 94 S.Ct. at 1102. The Court observed that although some types of employee rights could be waived by the union in order to obtain employer concessions during collective bargaining, waivers are tolerable only if there is "fair representation," and the selection of the employees' bargaining representative remains free. Id. The Court stated that where what is involved is the

right to choose a bargaining representative —"whether to have no bargaining representative, or to retain the present one, or to obtain a new one"—it should not be presumed that an incumbent union "fairly represents" the interests of the employees. *Id.*

> When the right to such a choice is at issue, it is difficult to assume that the incumbent union has no self-interest of its own to serve by perpetuating itself as the bargaining representative. [Citation omitted.] The place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees. So long as the distribution is by employees to employees and so long as the in-plant solicitation is on nonworking time, banning of that solicitation might seriously dilute § 7 rights.

*Id.*

The Court proceeded to make clear that the no-distribution rule in *Magnavox* could not properly be enforced against solicitation in favor of a rival union because the alternative avenues of communication were presumptively inadequate to protect the employees' right to support such a union:

> [A]s the Fifth Circuit said in the *Mid-States* case the bulletin board may be an adequate medium for "preserving the status quo" and yet not give a union's adversaries "equal access to and communication with their fellow employees." 403 F.2d at 705.

*Id.* at 326, 94 S.Ct. at 1102; *see also id.* at 327, 94 S.Ct. at 1103 (Stewart, J., joined by Powell & Rehnquist, JJ., concurring in part and dissenting in part) (agreeing that "a union cannot contractually waive the right of disaffected employees to distribute in nonwork areas and during nonwork time literature advocating the displacement of the incumbent collective-bargaining representative"). On the other hand, a majority of the Court found that, in fairness to the employees who are to choose between un-

ions, if on-premises distribution of literature is to be allowed to oppose the incumbent, it must be allowed in favor of the incumbent as well:

> [A] limitation of the right of in-plant distribution of literature to employees opposing the union does not give a fair balance to § 7 rights, as the Board ruled in the present case. For employees supporting the union have as secure § 7 rights as those in opposition.

415 U.S. at 326, 94 S.Ct. at 1102. Accordingly, the Court upheld the Board's ruling that Magnavox's no-distribution rule was not enforceable, regardless of whether the distributions were on behalf of the incumbent or on behalf of a rival.[7]

We do not view the Supreme Court's ruling in *Magnavox* as altering the principles set forth in *United Aircraft.* Rather, it appears to us that the focus of the Court's decision was the interplay between two factors—neither of which was at issue in *United Aircraft*—to wit, the employees' rights to choose their bargaining representative, *see Prudential Insurance Co. v. NLRB,* 661 F.2d 398, 400–01 (5th Cir.1981) ("Courts which have invalidated a clear contractual waiver of an employee's individual statutory right have done so only when the waived right affects the employee's right to exercise his basic choice of bargaining representative." (citing *Magnavox* )), as those rights might be affected by a complete ban on union-related distribution or solicitation on company property. Notwithstanding the fact that the *Magnavox* rule at issue banned only distribution of literature and not oral solicitation, it is clear that the rule resulted in the total elimination of such distribution, and the Court framed the issue before it in terms of the unions' power to consent to the total elimination of either distribution or solicitation. Thus the Court referred to "a *ban* on the distribution of union literature or the solicitation of union support," 415 U.S. at 324, 94 S.Ct. at 1101 (emphasis added), to rules "*prohibiting*" on-

---

7. *But see Eastex, Inc. v. NLRB,* 437 U.S. 556, 575 n. 23, 98 S.Ct. 2505, 2517 n. 23, 57 L.Ed.2d 428 (1978) (interpreting *Magnavox* as a "limited extension of the *Republic Aviation* rule to cover the distribution of literature by dissident employees advocating the displacement of a union").

premises solicitation outside of working hours, *id.* (emphasis added), and to the "*banning*" of in-plant solicitation on non-working time, *id.* at 325, 94 S.Ct. at 1102 (emphasis added). We see no indication that the Court intended to deal with the unions' power to bargain with respect to mere limitations on the time and place of union solicitation, as contrasted with the complete elimination of such solicitation. Indeed, the Court ended its opinion by noting that "as respects employers, the rights of solicitation of employees by employees concerning § 7 rights are not absolute," *id.* at 326, 94 S.Ct. at 1102, and stating that its *Magnavox* decision was not an appropriate occasion for reviewing Board determinations as to the propriety of employers' "limiting" in-plant communication, *id.* at 327, 94 S.Ct. at 1103.

*United Aircraft* did not involve a total ban on union solicitation, or even on any particular form of solicitation; it dealt merely with time and place limitations. The collective bargaining agreement and rule at issue barred union solicitation only during time for which the employee was being paid; they allowed such solicitation at all other times, *i.e.*, before work, after work, and at lunchtime. Thus, as the respondent union in *Magnavox*, supporting the Board's view that total waiver was impermissible, pointed out in its reply brief to the Supreme Court,

> [i]n *United Aircraft* [, *supra* ], the court considered the right to be free from anti-union discrimination to be fundamental and non-waivable, but held that a regulation of the time, place and manner of soliciting union membership on company property was non-fundamental and thus subject to the bargaining process so long

as reasonable access to company property for that purpose is preserved. That analysis is consistent with ... the Board's decision herein, because the rule here was not thus limited.

(Reply brief of International Union of Electrical, Radio & Machine Workers at 11 n. 3.)

We agree that the analysis in *United Aircraft* is consistent with the Board's *Magnavox* position that unions cannot consent to a rule eliminating the employees' rights to engage in on-premises union-related distributions.[8] And we see in the Supreme Court's approval of that position no indication that the Court sought—where employees are free, as in *United Aircraft,* to engage in any type of union solicitation they choose, whether for or against the incumbent or any other union, on company property before work, after work, or at lunchtime—to rule that the union had no power to bargain away employee rights to engage in solicitation at other times.

## CONCLUSION

The Board's petition for enforcement is denied.

MANSFIELD, Circuit Judge (dissenting):

I respectfully dissent for the reason that in my view the Supreme Court's decision in *NLRB v. Magnavox Co.,* 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974), established fundamental principles regarding employees' in-plant § 7 solicitation rights which preclude our giving collateral estoppel effect to our earlier decision in *United Aircraft Corporation v. NLRB,* 440 F.2d 85 (2d Cir.1971), and mandate our enforcement of the Board's order in the present case.

---

**8.** Although in the present proceeding the Board ascribed to *United Aircraft* the premise that a union could waive the employees' right to engage in "all" solicitation, 260 N.L.R.B. No. 8, at 6 (and in so doing plainly misread our decision, which emphasized the limited nature of the solicitation restrictions, 440 F.2d at 96, and distinguished *United's* rule from the "broad bans" at issue in other cases, *id.* at 97 n. 9), the Board took no such position before the Supreme Court in *Magnavox.* The Board's petition for certiorari contained only a "*cf.*" reference to *United Aircraft,* listing it simply as one of several cases illustrating that the question of union waiver of employee rights had been a recurrent problem before the courts. (Board's petition for certiorari at 7–8.) The Board in no way suggested that *United Aircraft* was inconsistent with the Eighth Circuit's rule, espoused by the Board in *Magnavox;* and the Court did not mention *United Aircraft* at any point in its discussion. ·

In *United Aircraft* we held that an employer's limited ban on union solicitation on the employer's premises during paid nonworking time [1] does not unduly restrict or dilute the employee's "fundamental rights" under § 7 and that the union may waive unlimited solicitation, at least when some limited remaining solicitation rights are permitted. We upheld the ban on the ground that the employees remained free to solicit on company property before and after work and during the unpaid lunch hour. Thereafter, in *Magnavox* the Supreme Court held that banning of employees' distribution of literature to employees on plant property during nonworking time interferes with employees' § 7 rights and that the union may not agree to waive those rights. The Court reasoned that the right to distribute and solicit, unlike "rights in the economic area," such as the right to strike, strikes too close to the union's self-interest to be waivable and added:

"The place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees. So long as the distribution is by employees to employees and so long as the in-plant solicitation is on nonworking time, banning of that solicitation might seriously dilute § 7 rights. For Congress declared in § 1 of the Act that it was the policy of the United States to protect 'the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing.' 29 U.S.C. § 151." 415 U.S. at 325–26, 94 S.Ct. at 1102.

The majority seeks to limit the broad reach of *Magnavox* by suggesting that the decision dealt only with "a complete ban on union-related distribution or solicitation on company property" and that there was "no indication that the Court intended to deal

with the unions' power to bargain with respect to mere limitations on the time and place of union solicitation, as contrasted with the complete elimination of such solicitation." (At 1263–64). This statement is not supported by the *Magnavox* decision itself or the authorities cited by it.

The *Magnavox* decision did not deal with a "complete ban." Nor did it suggest that limited, selective bans might be tolerated. The Court took pains to point out that the ban at issue was limited in that it did not prohibit the employees from using the bulletin board or oral solicitation to communicate with fellow-employees. Nevertheless the Court upset the ban. Moreover, the Court cited with approval and relied on its earlier decision in *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801–03, 65 S.Ct. 982, 987–88, 89 L.Ed. 1372 (1945), and the Board's decision in *Gale Products,* 142 N.L.R.B. 1246, 1249 (1963). See 324 U.S. at 801 n. 6, 65 S.Ct. at 987 n. 6. In *Republic Aviation Corp.* the Court, quoting with approval the Board's decision in *Matter of Peyton Packing Co.,* 49 N.L.R.B. 828, 843–44, stated:

" 'It is no less true that time outside working hours, whether before or after work, or during luncheon or *rest periods,* is an employee's time to use as he wishes without unreasonable restraint, although the employee is on company property. It is therefore not within the province of an employer to promulgate and enforce a rule prohibiting union solicitation by an employee outside of working hours, although on company property. *Such a rule must be presumed to be an unreasonable impediment to self-organization and therefore discriminatory* in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline.' " 324 U.S. at

1. Although the plant rule at issue in the present case prohibits union solicitation "during working hours," the phrase has been interpreted by the employer and employees as meaning paid *non-working rest time* spent away from work stations.

The Supreme Court's decision in *Magnavox, supra,* prohibits employer-restrictions on or un-

ion waiver of employees' union solicitation rights during non-working hours, whether paid or unpaid.

By paying employees the employer cannot convert non-working time into working time. Otherwise the employer and union could preclude solicitation during a lunch hour merely by designating it as "working time."

803–04 n. 10, 65 S.Ct. at 988 n. 10. (Emphasis added).

Nor may a limited ban on time and place of solicitation be justified on the ground that there are adequate alternatives. As the Court has pointed out, "union organization must proceed upon the employer's premises or be seriously handicapped," *Republic Aviation Corp., supra,* 324 U.S. at 799, 65 S.Ct. at 986, and "[t]he place of work is a place uniquely appropriate for dissemination of views," *Magnavox, supra,* 415 U.S. at 325, 94 S.Ct. at 1102. It is true, as the majority points out (at 1264), that in *Magnavox* the Supreme Court noted that "as respects employers, the rights of solicitation of employees by employees concerning § 7 rights are not absolute," 415 U.S. at 326, 94 S.Ct. at 1102. But the Court was not suggesting that a limited ban might be permitted. As it explained in the very next sentence (not quoted by the majority) it was referring to interference with plant production or discipline that might necessitate some limitations. There is no evidence —indeed, not even a suggestion—that the union solicitation during nonworking time in the present case interfered in any way with plant operations or discipline. The reference is therefore irrelevant.

Since the Supreme Court in *Magnavox* established a principle of broad public importance our decision in *United Aircraft Corp.* must be denied collateral estoppel effect. *Commissioner v. Sunnen,* 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874–75 (3d Cir.1972); *Denver Building & Construction Trades Council v. NLRB,* 186 F.2d 326, 332 (D.C. Cir.1950), *reversed on other grounds,* 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951). Our *United Aircraft* decision cannot properly be used to create a "preclusive exception" or independent enclave for United Technologies in violation of the basic principles of *Magnavox.* Equality of treatment is essential in the public interest.

For these reasons I would enforce the Board's order.